# THE STATE OF MONTANA, RESPONDENT, *v.* WILLIAM McMILLAN, APPELLANT.

[Submitted Jan. 12, 1898. Decided Jan. 17, 1898.]

1. DEFENDANT was convicted of the crime of rape on the person of a girl 9 years of age; the testimony of the prosecuting witness was to the effect, that the assault was made at night, in defendant's house, in a room adjacent to the room occupied by his wife and boy, who were awake at the time; that the door between the rooms was then open; that she did bleed a little at the time, and that defendant's wife had to wash her skirt (this was denied); that she played all the next day at defendant's house with other children, climbing roofs and swinging, etc., and not saying anything to Mrs. McMillan about the alleged assault; that she did not bleed any that day, but did the day after; and that she had had frequent conversations about the matter with her mother who had told her what to swear to, and that her testimony was more the result of her mother's instructions than of her own memory; the uncontradicted evidence was to the effect that the reputation of the girl and her mother for truth and veracity was bad; two physicians testified that in their opinion, the vulva of the child had been penetrated about three-fourths of an inch by the organ of a male person, but could not account for the slight penetration; one of the physicians testified that the girl, if such an assault had been made upon her at night, could not have played as she had done the next day, and that the bleeding would have occurred within a few hours after the assault, and would probably have ceased within 36 or 48 hours; the defendant and his wife directly contradicted the prosecuting witness; and a hired man, sleeping in a room in which he could have heard any disturbance, testified that he had heard nothing unusual. *Held*, that the evidence did not sustain a verdict of guilty.
2. CRIMINAL CASE—*Insufficient Evidence.*—In a criminal case, where the testimony is not only directly contradicted, but appears to be unnatural, improbable and unreasonable, there is more than a conflict in the evidence—it must leave a reasonable doubt upon the mind of an impartial and intelligent person, and under such circumstances, a verdict against the defendant should be set aside.

*Appeal from District Court, Cascade county. C. H. Benton, Judge.*

William McMillan was convicted of rape, and appeals. Reversed.

Statement of the case by the justice delivering the opinion.

The appellant, William McMillan, was on the 12th day of September, 1896, convicted of the crime of rape in the District Court of Cascade county. As appears from the record, the defendant is charged with committing said crime upon one Mary Augustine, a child nine years of age, on the 23d day of August of said year. Between the time of the alleged

commission of the offense and the conviction of the defendant, he had an examination upon said charge before a justice of the peace in Great Falls, Cascade county. On the 15th day of September of said year, the court sentenced the defendant to imprisonment in the penitentiary for the term of his natural life. The conviction was had upon the unsupported evidence of the girl upon whom the assault was alleged to have been committed, so far as the principal offense was concerned. Her testimony is substantially as follows, omitting many of the disgusting details, which we think unnecessary to put in this statement :

She testified that she lived with her parents on a ranch in Cascade county, near Priest's Crossing, on Sun river (it appears that the river separates the residence of the parents of the prosecutrix and the defendant, but that it is so narrow that people can well talk to one another across the same); that she had never before visited the home of the defendant until August 23, 1896; although she knew him well before that time, so well, indeed, that she called him, familiarly, "Billy;" that on August 23d she went to his home, and remained over night; that she slept on a cot in a front room, by an open door leading into the bedroom occupied by the defendant and his wife and their little boy, four years old; that simply a thin board partition separated the two rooms, and that the door between them stood open during the entire night; that in the night the defendant woke her up, and committed upon her the crime alleged in the information; that she bled some, but suffered very little, if any, pain; that defendant did not say anything when he came to her cot; that she knew he was there for something nasty; that she said nothing, made no outcry, because defendant, said he would choke her if she "hollered;" after the commission of the offense charged, she says, she went out doors by the front door four times, when Mrs. McMillan took the cot, and put it in her room, at the foot of the bed in which she and her husband (the defendant) were sleeping; that during all this time nothing was said by any one; that, while the offense was being committed, she heard the

wife of the defendant talking to her little boy, and for this reason knows that she was awake; that, after Mrs. McMillan moved the cot on which the prosecutrix was sleeping into her room, she got up and went out twice; that there was blood on her petticoat, and that Mrs. McMillan washed it the next morning (this is denied by Mrs. McMillan, who swears that she did not wash the petticoat, but says she washed the outer dress of the prosecutrix, in which she did not sleep, because it was very dirty, but not bloody; that there was no blood on it;) that, the morning after the alleged offense, she got up, had breakfast, and went out playing with the little boy; that she swung in a swing, climbed on top of a shed, and ran about on the roof thereof; that she did not bleed any after the night of the alleged rape until she was on the way, the next day, to Great Falls, to be examined by doctors. She further testified that after she got up in the morning after the alleged offense, and was washing, she heard her mother and a Mrs. Briggs, a neighbor, quarreling at the house of her parents, across the river from the defendant's house; that she stood in the front door, and mimicked or mocked her mother and Mrs. Briggs while they quarreled; and that she never said anything at any time to Mrs. McMillan or any one else at McMillan's about the offense. Late in the evening on the day following the night on which it is alleged this crime was committed, and after the prosecutrix had spent the day playing around the house of the defendant with his little boy, she says she saw her brother and another little boy wading in the river on the side next to her own house; that, seeing them there, she waded across the river to them; and that the reason why she did wade the river was because she wanted to go where they were. When she got home, about dark, she states her father and mother were not there; that they were in Great Falls that day; that, when they came home, she told them of what had occurred at McMillan's the night before, but they made no examination of her person, but about noon the next day took her to Great Falls, to be examined by a physician.

On arriving at Great Falls, she was taken to the office of

Dr. Crain, who, after making a preliminary examination of prosecutrix, called to his assistance Dr. Ladd, and also notified the prosecuting attorney and the sheriff's office. The examination by the physicians disclosed the fact that she was very considerably injured in and about her genital organs. While the physicians were of the opinion that the injuries had been inflicted by the organ of a male person, yet they admitted that it might have been done in some other way or by some other instrument. The vulva, it seems from their testimony, had been penetrated about three-fourths of an inch, but why there was not a more complete or further penetration if done by the organ of a male person the doctors were unable to explain. Dr. Ladd testified that in his opinion, after an assault of the character alleged in the information, and shown by the evidence to have been committed, upon a child of the age of the prosecutrix, it was highly improbable that she would be able the next day to play as she says she did, and swing all during the day, climb upon houses, and wade the river, as it clearly appears she did. He also testified that the flow of blood would occur after such an assault within the first hours, and would probably entirely cease in 36 or 48.

The prosecutrix also testified that she had frequent conversations with her mother about this offense, and that her mother told her what to swear to, and how to say it on the witness stand; that her testimony is given in this case more from the recollection of what her mother told her to say than from her memory of the actual occurrences. She also said that she knew what memory means.

Mrs. Briggs, a neighbor, testified that she was acquainted with the reputation of the prosecutrix and of her mother, and that the general reputation of both for truth and veracity was bad. There does not seem to be in the record any evidence to contradict the testimony of Mrs. Briggs in this respect.

The testimony of the defendant and his wife consists of an absolute denial of everything testified to by the prosecutrix. The hired man of the defendant also testified that he was

sleeping in the house that night, in a room adjoining that in which defendant and his wife slept; that the partitions between the rooms in said house are so thin that an ordinary conversation could be distinctly heard from one room to another. He says he heard nothing unusual or out of the ordinary during the night; that he saw nothing the next day in the condition, manner, or behavior of the little girl to cause him to suspect that any injury of any kind had been inflicted upon her. He says that at the dinner table the prosecutrix had whimpered a little, and said that she wanted to go home, when the defendant told her that her father and mother were not home, had gone to Great Falls, and that she had better not go home until they returned.

The testimony of other witnesses in the case is not directly relating to the main offense.

It is not disputed that the conviction of the defendant resulted from the testimony of the prosecutrix alone, which stands substantially in the record without corroboration. The defendant appeals from the judgment.

*Stanton & Stanton,* for Appellant.

*C. B. Nolan,* Attorney General, for the State.

PEMBERTON, C. J.—The principal assignment of error in the case is that the "verdict is not supported by the evidence, and appears to have been rendered under the influence of passion and prejudice."

It is the well-settled general rule of law, especially in this jurisdiction, that a verdict will not be disturbed when there is simply a conflict in the evidence,—where there is evidence sufficient to support the verdict. But this record does not present simply a conflict in the evidence. It is insisted that the uncorroborated evidence of the prosecutrix, upon which the conviction was had, is so unreasonable, unsatisfactory, and contradictory as to unavoidably leave in the mind of any impartial person a reasonable doubt, when considered from a legal standpoint.

When the testimony is flatly and positively contradicted, there may be said to be a conflict in the evidence. But when the testimony is not only flatly contradicted, but appears to be so unnatural, improbable, and unreasonable as to render belief impossible, it is more than a simple conflict, and must necessarily leave in the mind of an impartial, deliberate and intelligent person a reasonable doubt.

Viewing evidence from a legal standpoint, we are of the opinion that we have just this kind of a case presented by this appeal. We will refrain from entering into any detail or restatement of the evidence here. Enough of the disgusting details may be found in the statement. It is conceded that the evidence of the prosecutrix is contradicted in many material particulars, but counsel for the state seek to excuse this upon the ground of age. But in a case so serious as this it will not do to say that a jury should believe unnatural, unreasonable, or contradictory evidence because it is the evidence of a child of tender years. The testimony of the prosecutrix is not only subject to the criticism above; but she says she testified to what her mother told her to swear to, and that she told her story as and in the manner her mother directed; that she testified from what her mother told, rather than from her memory of the facts as they occurred.

In addition to this, Dr. Ladd, a witness for the state, who examined the prosecutrix after she was injured, says, in effect, but positively, that a child of her age, after receiving such injuries at night, could not the next day play, swing, climb on houses, and wade rivers, as the prosecutrix swears she did. According to the testimony of Dr. Ladd, the testimony of the prosecutrix is unnatural and unreasonable in this respect, so much so that we believe that, in law, it must necessarily leave in the mind of any fair, impartial, and intelligent person what the law calls "a reasonable doubt" of the guilt of the defendant. And that such evidence did not produce such a doubt in the minds of the jury that tried the case, forces the impression upon the minds of this court that passion and prejudice to some extent may have influenced the jury in render-

ing their verdict. The verdict does not seem to us to be the reasonable result of a calm and deliberate consideration of the evidence by men uninfluenced by passion and prejudice.

Our attention is also attracted to the fact that the trial of the defendant occurred so soon after the alleged commission of the offense that perhaps the community was not in such a calm and quiet condition as to be free from that bias and prejudice which is always aroused in any community by the commission of offenses of such enormity as the one charged against the defendant.

We think, after a full consideration of the evidence, that it is not sufficient in law to support the verdict.

There are other assignments of error in the record; but as the case must go back for a new trial, and as such errors, if errors they be, are not likely to occur again, we consider it unnecessary to treat them.

The judgment appealed from is reversed and the cause remanded for new trial.

*Reversed and Remanded.*

HUNT and PIGOTT, JJ., concur.