STATE, RESPONDENT, *v.* WILSON, APPELLANT.

(No. 5,927.)

(Submitted May 22, 1926. Decided June 9, 1926.)

[247 Pac. 158.]

*Criminal Law—Rape—Evidence—Insufficiency—Alibi—Extent of Burden of Proof Resting on Defendant.*

Rape—Appeal—Insufficiency of Evidence—New Trial—Crime of Revolting Nature—Supreme Court in More Advantageous Position to Determine Sufficiency of Evidence—Reasons.
　　1.　The general rule that an application for a new trial on the ground that the evidence is insufficient to justify the verdict or that the verdict is contrary to the evidence, is addressed to the sound discretion of the trial court, and that where a conflict appears in the evidence and the record contains substantial evidence to support the verdict, the action of the court in denying the motion will not be disturbed on appeal, has not the persuasive force it has in ordinary cases, in the case of a heinous crime, such as rape committed on a child eight years of age by one afflicted with gonorrhea, where the calm and deliberate judgment of court and jury may for the time being have been overcome by the recital of the revolting circumstances narrated by the witnesses; under such conditions the appellate court is in a more advantageous position to weigh the evidence adduced and determine whether the evidence was sufficient to warrant a verdict of guilty.

Same—When Judgment of Conviction will be Reversed on Ground of Insufficiency of Evidence.
　　2.　The power of the jury in judging the effect of evidence is *not arbitrary but is to be* exercised with discretion and in subordination of the rules of evidence; hence where a conviction for rape was had on testimony of the prosecutrix so improbable as to destroy it as legal evidence, the judgment will be reversed and a new trial ordered.

---

1.　See 20 R. C. L. 276.

[76 Mont. 384.]

Same—Alibi—Extent of Burden of Proof Resting upon Defendant.

3. The burden resting upon a defendant charged with crime to prove an alibi extends only to the introduction of sufficient proof to raise a reasonable doubt as to the existence of the defense.

Same—Evidence—Insufficiency.

4. Where the testimony of two physicians as witnesses for defendant charged with rape committed by one afflicted with gonorrhea, that two days after prosecutrix was found to be suffering from that disease and nine days after the alleged commission of the crime, upon a careful examination of the defendant they found no trace of the disease, was uncontradicted, and defendant established an irrefutable alibi, and the testimony of the prosecutrix was so improbable as to deny it belief, the judgment of conviction will be reversed.

[1] Criminal Law, 16 C. J., sec. 2707, p. 1180, n. 72; 17 C. J., sec. 3589, p. 252, n. 16; sec. 3594, p. 264, n. 89; sec. 3596, p. 267, n. 99; sec. 3599, p. 271, n. 41.

[2] Criminal Law, 16 C. J., sec. 2291, p. 931, n. 93, 98; 17 C. J., sec. 3596, p. 267, n. 99.

[3] Criminal Law, 16 C. J., sec. 1004, p. 533, n. 8, 13; sec. 1588, p. 777, n. 88, 90.

[4] Criminal Law, 17 C. J., sec. 3596, p. 269, n. 8; sec. 3599, p. 272, n. 43. Rape, 33 Cyc., p. 1486, n. 12.

*Appeal from District Court, Flathead County; C. W. Pomeroy, Judge.*

MURRELL WILSON was convicted of rape, and appeals from the judgment and an order refusing him a new trial. Reversed and remanded.

*Mr. A. L. Hughes,* and *Messrs. Grubb & Brennan,* for Appellant, submitted a brief; *Mr. Hughes* and *Mr. W. J. Brennan* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Angstman* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant was charged by information with the crime of rape, alleged to have been committed on or about

3. Proof of an alibi by defendant beyond a reasonable doubt, see notes in 41 L. R. A. 530; 8 Ann. Cas. 1189. See, also, 8 R. C. L. 224.

76 Mont.—25

the eleventh day of November, 1925, upon the person of a girl of the age of eight years. The trial resulted in a verdict of guilty, followed by judgment and sentence to a term of not less than five nor more than ten years in the penitentiary; whereupon defendant moved the court to grant him a new trial, which motion was overruled. Appeal from the order and from the judgment followed.

The learned trial judge was eminently fair to defendant during the trial and exceedingly lenient in fixing the punishment, imposed for the commission of such an offense. The only assignment made, or which could be made on the record before us, is: That "the court erred in overruling defendant's motion for a new trial for the following reasons: That the verdict is contrary to the law and the evidence  *  *  *  and that the evidence is insufficient to justify the verdict."

The record discloses the following undisputed facts: The defendant is a young man living with his family, consisting of his father, mother and sister, the latter being of the same age, a playmate of, and attending the same school as the prosecutrix. The family home is "catty-cornered" across the street from the home of the family of the prosecutrix. The defendant worked at the Great Northern roundhouse and was off shift each day at 3:30, and prosecutrix and defendant's sister were excused from school at 3:30. The testimony which the jury was called upon to weigh in arriving at a verdict follows: The prosecutrix testified that, on a certain day which she could not fix either as to date or day of the week, she returned directly home from school, asked her mother if she could go over to the Wilson house to play with the Wilson girl, and, on being granted permission, went to the Wilson house. Seeing no one about, she went into the house through the front door. She testified that there was no one in the front room, but that the defendant was in a bedroom opening off of the front room where he was changing his clothes; that defendant called her into the room and immediately

picked her up, placed her on the bed, and committed the act alleged. Her testimony fixed the time at approximately 4 o'clock.

On cross-examination the prosecutrix was asked the question, ''Mrs. Wilson wasn't there?'' to which she replied, ''No; she was selling chickens.'' Again and again she was asked if the day referred to was the day on which Mrs. Wilson was selling chickens, and each time she replied positively that that was the day. She was asked if she said anything, if she cried out, and if defendant hurt her, to each of which questions she answered, ''No.'' Her testimony was given ''between sobs and spells of crying.''

Prosecutrix testified that on the following morning she told her mother what had been done to her and that her mother took her to a doctor. She did not attend school thereafter and the family has since removed from the state.

The mother of the prosecutrix testified that on a night in November, not fixed, the child complained of being sore ''like most children do''; that she found the girl's private parts sore, washed her, put her to bed, and the next day took her to a doctor. The witness then testified that she asked her daughter where she had been, and that the reply was that she had been over to Wilson's, and that she then told what the defendant had done; that she asked if Mrs. Wilson was there at the time, and the girl replied that Mrs. Wilson was out selling chickens. On cross-examination the witness denied that her daughter told her of the offense immediately after it was committed, but stated that it was ''several days after'' and at about 9 o'clock in the evening, and that it was one or two days thereafter before she took the girl to the doctor.

The prosecutrix, being recalled for further cross-examination again stated positively that the alleged offense was committed on the day Mrs. Wilson was selling chickens and that she told her mother the next morning.

Two physicians then testified that the girl was brought to them on November 16th, when they made a careful examination of her. Each testified that, in his opinion, there had been a slight penetration not extending to the hymen, which was not ruptured. Each further testified that the child was suffering from an acute infection of gonorrhea in an advanced stage, which, in his opinion, could not have been contracted less than three or four days, nor more than two or three weeks, prior to the examination.

On behalf of the defendant the testimony clearly established the fact that the day on which Mrs. Wilson was selling chickens, and the only day on which she ever did so, was Monday, November 9, 1925. Mrs. Wilson testified that the family had, on Sunday the 8th, gone to the ranch of Mr. Wilson's father; that the old gentleman had a number of chickens to sell and returned to town with the family, where he sold chickens the following morning; that as he was tired by noon she went out in the afternoon to take orders for chickens for him, and that on no other day did she sell chickens. She testified that defendant "comes home at 4 o'clock for his dinner," and that just prior to 4 o'clock on Monday the 9th she was in front of the home of prosecutrix, and that the prosecutrix was outside; that her son passed her on his way home, and asked her where she was going, to which she replied that she was going to try to sell chickens there, and defendant went on home; that she sent the girl to call her mother, asked if the mother wanted to buy any chickens, and, receiving a negative answer, went on home, arriving within five minutes after the defendant, and found him talking to his grandfather in the front room. She accounted for his actions for the rest of the evening and was corroborated by other witnesses.

The grandfather testified that he was on the lounge in the front room dozing and reading from 2 o'clock until 7 o'clock on the afternoon of the 9th and that no one had entered

the room until the defendant came. He further testified that
the Wilson girl came to the house for an oil-can some time
after Mrs. Wilson came home and that there was another
girl with her; that out of curiosity he asked Mrs. Wilson who
she was and was told the name of the prosecutrix; that the
girls got the can and left.

Frank Wilson, the father of the defendant, testified that
about 4:15 on the 9th he was delivering wood to a neigh-
bor when his girl appeared on her road home from school
and that the prosecutrix was approaching with a Mrs. Swisher;
that he sent his girl for an oil-can, and prosecutrix joined
her; that they took the can to the store and were back in
about five minutes and then waited until he had finished un-
loading the wood and rode out to the ranch with him. The
grandfather testified to seeing the two girls at the wood lot.
Mrs. Swisher testified that on the 9th, between 3:30 and 4,
she met the prosecutrix at the store and they walked home
together; that they met the Wilson girl, who said something
about an oil-can, and the two girls went off together.

In addition to accounting for defendant's whereabouts at
the time prosecutrix fixed as the time of the commission of
the crime, as above shown, the evidence discloses that on that
evening he was preparing to go hunting and that he was away
from town on such mission all of the next day. Mrs. Wilson
testified that on the 11th defendant arrived home at about
4 o'clock, washed up, and went out to the Baker ranch; that
on the 12th he came home about the same time, cleaned up,
and went to a committee meeting at Thompson's, and on the
13th he came home and went immediately to Kalispell and
to a dance, thus furnishing an alibi for the time of day on
which the crime was committed, not only on the day fixed
by the prosecutrix, but on the four succeeding days.

The defendant in his own behalf testified that he was off
shift each day at 3:30 and that it took him about fifteen
minutes to get ready to leave and another fifteen minutes to

get home, so that he arrived home about 4 o'clock each afternoon. He denied the commission of the crime and testified that he never had gonorrhea. Two physicians testified that on November 18, 1925, or two days after the prosecutrix was found to be suffering from gonorrhea, they made a careful examination of the defendant and found no trace of that disease.

Four neighbors who were on friendly terms with the parents of the prosecutrix, according to their undisputed testimony, testified that the girl's reputation for truth and veracity was bad. The first witness to so testify said on cross-examination: "I say her reputation is bad because everybody in the neighborhood says so." The other witnesses were not cross-examined and no attempt was made to dispute this evidence or to nullify its effect.

With reference to the alibi furnished, the assistant attorney general ingeniously suggests that the crime may have been committed on November 14th, when defendant's actions were not accounted for, and that, taking the testimony of the girl that she told her mother the day after the assault, and the testimony of the mother that she took the girl to the doctor the day after she was told, and the testimony of the physicians that the girl was brought to them on the 16th, we can fix the date of the commission of the crime as the 14th. But to so assume would be to do violence to the case made by the evidence introduced for the purpose of fixing the date. We would have to entirely disregard the positive testimony of the prosecutrix, many times repeated, and reiterated after her mother had fixed the time with reference to taking her to the doctor, that the crime was committed on the day on which Mrs. Wilson was out selling chickens, the testimony of the mother that the girl did not confide in her until several days after the act was committed and that it was then one or two days later before the visit to the doctor, and the testimony of the physicians as to the time necessary for the de-

[76 Mont. 384.]

velopment of the disease, with which she was found to be suffering, to the stage in which they found it.

From all of the evidence it is clear that, if the defendant committed the crime charged, he did so on Monday, November 9, 1925, at or about the hour of 4 o'clock P. M., and at no other time. The jury found by its verdict that he did so commit the crime charged.

The general rule, of course, is that an application for a [1] new trial on the ground that the evidence is insufficient to justify the verdict, or that the verdict is contrary to the evidence, is addressed to the sound discretion of the trial court, and that, where there is simply a conflict in the evidence and the record contains substantial evidence to support the verdict, the action of the court in denying the application will not be disturbed on appeal. (*State* v. *Foster,* 26 Mont. 71, 66 Pac. 565; *State* v. *McCarthy,* 36 Mont. 226, 92 Pac. 521.) This rule is based upon the theory that, as the jurors had the advantage of seeing the witnesses and heard them testify, they were in a better position to determine the truth or falsity of the statements made, and that the trial court, in passing upon the motion for a new trial, has likewise been in a better position to determine whether the defendant has been justly convicted than are the members of the appellate court by merely reading the cold record. In civil actions involving property rights and in the ordinary criminal action, this is undoubtedly so; but this was not a case wherein a more or less matured girl under the age of consent did in fact consent to the act, but, if the child told the truth in this regard, and we cannot but believe that a child of such tender years did not consent, the record discloses a forcible rape of a girl of eight years of age. There can be no question but that a crime was committed; the child's condition precludes all doubt, and no punishment which the court could mete out to the perpetrator when discovered could be too severe. Not only is such a crime upon

a mere baby shockingly atrocious, but it was the more dastardly
because of the fact that the degenerate who committed it was,
at the time, infected with a loathsome disease which would
necessarily be, and was, communicated to her.   The revolting
nature of the offense, related by the child under the circum-
stances pointed out, may have been sufficient to so turn right-
minded men against the person named by the prosecutrix as
her assailant that all discrepancies in her testimony and any-
thing said on behalf of the defendant thereafter would make
but little impression upon their minds.

Under such circumstances as are here disclosed, the reason
for the rule above does not have the persuasive weight that
it has in the ordinary case, and it may well be that, removed
from the emotional and prejudicial atmosphere of the court-
room and the effect produced upon the mind by seeing the
witnesses on the stand and hearing them testify, the appellate
court is in a more advantageous position than was the jury
on the trial, or the trial court shortly thereafter, to weigh the
evidence adduced, and determine whether there was sufficient
evidence to warrant the verdict rendered.

Sir Matthew Hale long since pointed out that, in cases of
this nature, the greatest caution should be exercised, as ''the
court and jury may with so much ease be imposed upon with-
out great care and vigilance; the heinousness of the offense
many times transports the judges and jury with so much in-
dignation that they are overhastily carried to a conviction of
a person accused thereof by the confident testimony, some-
times of malicious and false witnesses.''   In the light of the
circumstances of this case, these remarks are particularly per-
tinent here.

While it is not questioned that testimony is addressed to the
[2]   jury and that the jurors are the sole judges of the credi-
bility of the witnesses (sections 10698 and 10508, Rev. Codes
1921), or that this court cannot, on appeal, substitute its judg-
ment for that of the jury as to the weight to be given to the

testimony of a witness in the absence of such inherent weakness therein as would destroy it as legal evidence (*State* v. *Popa,* 56 Mont. 587, 185 Pac. 1114), the power of the jury in judging the effect of evidence is not arbitrary, but is to be exercised with legal discretion and in subordination of the rules of evidence, and before it can convict a defendant his guilt must be established by competent, legal evidence beyond a reasonable doubt (sec. 10672, Rev. Codes 1921). As suggested in the *Popa Case,* an exception is made to the general rule stated above, where the inherent weakness or improbability of the testimony is such as to destroy it as legal evidence. This exception has been applied by this court even in civil cases (*First Nat. Bank* v. *Larsen,* 65 Mont. 404, 211 Pac. 214), and should apply with greater force in cases such as this, wherein the liberty of a citizen is in jeopardy and the ignominy attaching on conviction will, to the ordinarily decent man and his family, be a greater punishment than the penitentiary sentence imposed. The exception to the rule has been applied to cases such as this by this court (*State* v. *Moe,* 68 Mont. 552, 219 Pac. 830; *State* v. *McIlwain,* 60 Mont. 598, 201 Pac. 270; *State* v. *McMillan,* 20 Mont. 407, 51 Pac. 827), and, while the question presented in these several cases differed from that before us, what we have heretofore said on the subject is pertinent here.

In the *McIlwain Case* this court said: "When testimony is flatly and positively contradicted, there may be said to be a conflict in the evidence. But when the testimony is not only flatly contradicted, but appears to be so unnatural, improbable and unreasonable as to render belief impossible, it is more than a simple conflict, and must necessarily leave in the mind of an impartial, deliberate, and intelligent person a reasonable doubt."

In the *Moe Case,* Mr. Chief Justice Callaway, speaking for the court, said: "It is settled in this jurisdiction that a conviction for rape may be sustained by the uncorroborated testimony of the prosecutrix (*State* v. *Vinn,* 50 Mont. 27, 144

Pac. 773; *State* v. *Tate,* 55 Mont. 343, 177 Pac. 243; *State* v. *Richardson;* 63 Mont. 322, 207 Pac. 124), unless her testimony is so inherently improbable or is so nullified by material self-contradictions as to be unworthy of belief (*State* v. *Gaimos,* 53 Mont. 118, 182 Pac. 596; *State* v. *McIlwain,* 60 Mont. 598, 201 Pac. 270) ; * * * the charge is * * * 'hard to defend against even by one who is guiltless.' The charge * * * presents a situation so shocking to the sensibilities of every decent man that an approach to calm consideration of the testimony is fraught with difficulty. By reason of the infirmities of human nature, a recital of the details of the alleged offense by the prosecutrix may bring from a well-intentioned jury a verdict which is the result of passion and prejudice. * * * The verdict of a jury, arrived at upon the uncorroborated testimony of the prosecutrix, may well be the subject of a rigid analysis by an impartial judicial mind.''

The inherent improbability of the prosecutrix's own testimony lies in this: That the defendant, in possession of the ordinary faculties of a young man able to retain a position and, from all that appears in the record, reasonably bright, no matter how depraved, would conceive and carry out such a dastardly crime in his own home, in the daytime, with the doors open, neighbors on all sides, and his victim's mother living across the street, his own mother in town due to get dinner at the exact time of the crime, and his young sister apt to enter the house at any moment, being then half an hour out of school; that she did not cry out; and that the act did not hurt her, although physicians called by the state, testified that penetration was practically impossible in one of her years.

In addition to the inherent improbability of the testimony of the prosecutrix, the defendant made out an irrefutable alibi, not only proving that the crime could not have been committed at the time and place fixed, by the testimony of three members of his family, but by showing by a disinterested witness that the girl was out on the street at the time she

claimed she was assaulted, and, for good measure, proved that it was impossible for the defendant to have committed the crime as detailed by the prosecutrix on the following day, or the next, or the next.

While the burden rests upon a defendant in a criminal [3] action to prove an alibi, this burden extends only to the introduction of sufficient proof to raise a reasonable doubt as to the existence of such affirmative defense. (*State* v. *Spotted Hawk*, 22 Mont. 33, 55 Pac. 1026; *State* v. *Felker*, 27 Mont. 451, 71 Pac. 668.) Here it would seem from the record that the defendant not only sustained that burden, but proved beyond a reasonable doubt that he did not have the opportunity to commit the crime by proving conclusively that he could not have been in the bedroom at his home with the prosecutrix at the time fixed, nor for two hours before that time, nor three hours thereafter.

But even more positive proof, if possible, than his alibi, [4] seems to our minds to have been furnished by the undisputed testimony that the defendant was not affected with gonorrhea nine days after the alleged commission of the offense.

In support of the motion for a new trial, defendant presented the affidavits of two women residing in the neighborhood, showing a venomous antagonism on the part of the mother of the prosecutrix prior to the alleged commission of the offense toward the mother of the defendant, and the statement made by her after the arrest of the defendant, and referring to Mrs. Wilson, "Now I will get revenge on that ——— ——— ———," which facts were not disclosed to the defendant or his counsel until after the trial. It will not be necessary to determine whether this newly discovered evidence was sufficient to warrant the granting of a new trial, but it is enlightening as showing motive for fixing the crime upon the defendant.

We have carefully and earnestly considered all of the evidence in the case and are convinced that the verdict is contrary to the evidence and, as the jury could only convict upon

evidence establishing the guilt of the defendant beyond a reasonable doubt, that the verdict is against law. The trial court therefore erred in denying the defendant a new trial.

The judgment and order appealed from are reversed, and the cause is remanded to the district court of Flathead county, with direction to grant the defendant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY AND ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.