THE STATE OF MONTANA, Plaintiff and Respondent, v.
DONALD WALKER, Defendant and Appellant.

No. 11032.
Submitted September 14, 1966. Decided October 19, 1966.
419 P.2d 300.

Vernard C. Anderson, Jr. (argued), Billings, for appellant.

Forrest H. Anderson, Atty. Gen., James R. Beck, Asst. Atty. Gen. (argued), Helena, John L. Adams, Jr., County Atty. (argued), Billings, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Donald Walker was convicted of burglary. He has appealed on several grounds from the judgment and order denying him a new trial. The specifications of error are:

(1) A new trial should have been granted because the verdict of the jury was contrary to the law and evidence;

(2) The lower court erred in admitting into evidence for impeaching purposes Exhibit 5 which was a written statement made by the witness, Richard Berryman;

(3) The lower court erred in giving Instruction 20 on false, contradictory, or misleading statements made by the defendant concerning the charge against him; and

(4) The lower court erred in giving Instruction 22 on testimony showing or tending to show flight or escape by the defendant.

To appellant's specification of error (1) we find no prejudicial error requiring a new trial. On June 28, 1965, at approxi-

mately 3:00 A.M., Toby's Bar in Laurel, Montana, was burglarized. A quantity of merchandise, liquor, money and cigarettes was stolen. James Purkett, an engineer for the Northern Pacific Railroad, lived in a cabin about fifty feet from Toby's Bar, and on coming home he saw a car pulling away from the bar, which he described as a 1965 Ford with a Texas license plate, and it had two or more people in it. Mr. Purkett followed the car into Laurel, lost it for about ten minutes and then saw it again in front of the Owl Cafe. He then notified the police about seeing that particular car in the vicinity of Toby's Bar.

At approximately 3:49 A.M., Deputy Sheriff Meeks, while on patrol in the City of Billings some 15 miles away, received the report of an alleged burglary and the description of the vehicle Mr. Purkett had seen. A few weeks prior, Officer Meeks observed a vehicle answering the same description in the vicinity of 3315 Eighth Avenue South, Billings, the residence of one Phyllis Niles, a sister of the appellant. Officer Meeks immediately proceeded to that address. The vehicle was not there, so he took up a surveillance across the street. Sometime later a vehicle answering the description, travelling at a high rate of speed, approached and on looking through binoculars, Meeks observed that the person on the passenger side was turned around apparently covering something up in the rear seat with a piece of material.

Meeks pulled up behind the suspect car and turned on the flashing lights of his squad car. The vehicle pulled into the driveway at the house of the appellant's sister, with Meeks behind. The appellant got out of the car on the passenger's side, stretched and informed the officer that he was very tired and that he had just been fishing. Richard Berryman, the driver of the car, got out and conversed with Officer Meeks. During the conversation between Berryman and the officer, the appellant entered his sister's house.

While talking with Berryman, Meeks noticed some bottles

and boxes in the car which looked like they contained liquor, and thereupon arrested Berryman. A search of the car revealed a quantity of whiskey, cigarettes, moneybags, money, fishing gear and burglary tools. He placed Berryman under arrest at about 5:10 A.M. based on the report of the burglary and what he found in the car.

After the city police arrived, Officer Meeks went into the house to search for the appellant. The appellant could not be found, but Officer Meeks observed a window open on the side of the house facing the alley, and so immediately alerted city officers to look for appellant, naming appellant as a burglary suspect.

Some thirty to forty-five minutes after Berryman was taken into custody, appellant was apprehended. He was found behind his sister's residence attempting to secrete himself in the trunk of a parked car.

In the meantime, Mr. Purkett, who had observed the car in Laurel, was taken to the residence of appellant's sister where he identified the car, even as to the Texas license plates, as being similar to the one he had seen in the vicinity of Toby's Bar.

Richard Berryman admitted that he committed the burglary out of which the charge against the appellant arose, and is presently confined in the Montana State Prison for this offense. Berryman however stated that the appellant was not with him when he committed the burglary. He testified that he was alone when he left Laurel.

Berryman testified at the trial that he picked up the appellant between the hours of 3:00 and 4:00 A.M. for the purpose of having a drink with him. He stated that he and the appellant spent the time just riding around Billings drinking. On July 1, 1965, Berryman signed a written statement, introduced as Exhibit 5, in which Berryman stated he had picked up the appellant between the hours of 2:00 and 3:00 A.M.

The appellant testified at the trial that he, Pat Ruland, Connie Wright, his sister Phyllis Niles, and Richard Berryman had been drinking together on the night of the burglary; that he, his sister and Pat Ruland had left the bar at about 2:00 A.M. and proceeded to his sister's house; that Berryman and Connie Wright left the bar together a little before 2:00 A.M.; that between 3:00 and 4:00 A.M. Berryman came to his sister's house and invited appellant to go riding. He further testified that they rode around the north side of Billings drinking, and as they returned home a sheriff's car pulled in behind them; that while the officer was talking to Berryman the appellant went into the house. Appellant then stated that he returned out of the front door and went around to the back of the house to a parked car to get some tools which were in the back seat. The purpose for getting the tools was to work on a door of the house. This was between 5:00 and 5:30 A.M.

On cross examination, appellant denied making the statement to Officer Meeks "that he was tired and had been fishing." However, Berryman in his statement of July 1, 1965, contained in Exhibit 5, when asked why the appellant had stated that he was tired because they had just been fishing stated: "I don't know why he said that as he might have been trying to protect me." Appellant also denied that he at any time covered any of the property in Berryman's car.

Pat Ruland, a defense witness, testified about the drinking party at the bar, and how she, the appellant and the appellant's sister all went to the latter's home to sleep. She testified that sometime between 3:30 and 4:15 Berryman came by and picked up the appellant. Officer Meeks testified on rebuttal that Miss Ruland had emphatically told him on July 1, 1965, that Berryman had picked up the appellant between 4:00 and 5:00 A.M.

■ ■ This court has consistently subscribed to the general rule "that an application for a new trial on the ground that the evidence is insufficient to justify the verdict, or that the

verdict is contrary to the evidence, is addressed to the sound discretion of the trial court, and that, where there is simply a conflict in the evidence and the record contains substantial evidence to support the verdict, the action of the court in denying the application will not be disturbed on appeal." State v. Wilson, 76 Mont. 384, 391, 247 P. 158, 160; see also State v. Estep, 103 Mont. 78, 61 P.2d 830; State v. Schleining, 146 Mont. 1, 403 P.2d 625.

The reason for this rule is expressed in State v. Wilson, supra, 76 Mont. at p. 391, 247 P. at p. 160, as follows: "This rule is based upon the theory that, as the jurors had the advantage of seeing the witnesses and heard them testify, they were in a better position to determine the truth or falsity of the statements made, and that the trial court, in passing upon the motion for a new trial, has likewise been in a better position to determine whether the defendant has been justly convicted than are the members of the appellate court by merely reading the cold record."

■ Berryman admitted he committed the burglary. A witness testified that two people were in Berryman's car as it left the scene of the crime. From the approximate time that the burglary occurred to the time Officer Meeks took up his surveillance across from appellant's sister's house only about forty-five and not more than sixty minutes had lapsed. Officer Meeks found the stolen property in Berryman's car, in which appellant at that time was a passenger. The testimony varied greatly as to the time Berryman had picked up the appellant at his sister's house. It was a matter for the jury to determine what testimony it would believe or disbelieve. Clearly, in this case the district court did not abuse its discretion. Thus, the record contains substantial evidence upon which the jury could base its verdict of guilty.

Regarding the second specification of error we hold there was no error committed by the lower court in admitting Exhibit. 5 into evidence. The prosecutor introduced Exhibit 5

for the purpose of impeaching the witness Berryman by showing that he made prior inconsistent statements. Berryman read over the exhibit and had the opportunity to make any changes in his statement, but did not do so. Then he signed it. At the time of its intrduction the following objection was made:

"Mr. Adams: Do you have any objection?

"Mr. Anderson: I will object on the grounds that the witness has stated that it is not a true statement."

On appeal, appellant contends that Exhibit 5 contains matters which are collateral and prejudicial to the defendant. Questions and answers in particular are those dealing with Berryman's relationship with Connie Wright, Phyllis Niles and Pat Ruland.

Before the trial court will be put in error it must be given a chance to correct itself. Defense counsel Anderson's objection made no mention of matters which were collateral and prejudicial to appellant. The specific ground for the objection is essential for the objection to be good. In State v. Souhrada, 122 Mont. 377, 385, 204 P.2d 792, 796, we stated: "* * * The error urged on appeal was not contained in the objection made to the particular question asked. It is well-settled that an objection, to be good, must point out the specific ground of the objection, and that, if it did not do so, no error is made in overruling it."

There was nothing in Exhibit 5 which could be considered prejudicial which had not already been put into evidence. Further, appellant does not specify exactly how these questions and answers prejudice him. "Prejudice in a criminal case will not be presumed but rather must appear from the denial or invasion of a substantial right from which the law imputes prejudice. Too, the defendant must demonstrate prejudice from the record." State v. Schleining, 146 Mont. 1, 14, 403 P.2d 625, 632. This was not the case here.

The prosecution followed the procedure for impeach-

ing the witness as is specified in State v. Deeds, 126 Mont. 38, 243 P.2d 314. Each question and answer upon which the impeachment of the witness was sought was separately called to his attention, and he was asked if he made such an answer.

In addition, it should be noted that at the trial the appellant did not object to Exhibit 5 being taken into the jury room; in fact, appellant consented to it.

The trial court gave a stock instruction numbered 20 which appellant lists as his third specification of error. The instruction reads: "Evidence, if any, that the defendant on one or more occasions, other than from the witness stand, made false, contradictory, or misleading statements, concerning the charge against him which is now being tried, may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and the significance, if any, to be attached to it, are matters for the jury to determine."

The lower court did not err in giving this instruction. The appellant did make "false, contradictory, or misleading statements concerning the charge against him." Officers Meeks testified as follows:

"Q. Did Mr. Walker, that is the defendant here, that got out of the vehicle, did he say onything or make any comment to you? A. Yes, he did.

"Q. What, if anything did he say? A. He stretched and said, 'he was very tired, he had been fishing.' "

That the appellant did make such a statement is corroborated by the following question asked of and answered by Berryman in Exhibit 5.

"Q. When I stopped you and Walker, Walker told me that he was tired as you two had just returned from fishing. How do you account for this statement and the description in your account of where you had been since you picked him up?

A. I don't know why he said that as he might have been trying to protect me."

The appellant testified on the stand that after Berryman picked him up that they "just went riding, it was over on the north side and had a few drinks." Appellant in his brief admitted that the statement made by him when he first got out of the car was contradictory to what he later testified, however, he asserts that it was not a statement concerning the charge against him.

These contradictory statements as to where he and Berryman were at the approximate time the burglary occurred concern the charge against him. Since the appellant was found in a car full of loot from a burglary and in the company of one who admitted the burglary, both of these contradictory statements were attempts to justify his presence in the car, and show that he was not with Berryman at the time of the burglary.

The fourth specification of error concerns instruction numbered 22, which is: "You are further instructed that if you are satisfied that the crime charged in the Information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, flight or escape by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and the significance, if any, to be attached to it, are matters for the jury to determine."

This court has approved instructions which stated that the flight of an accused may be considered by the jury as a circumstance tending to prove the consciousness of his guilt. See State v. Bonning, 60 Mont. 362, 199 P. 274, 25 A.L.R. 879; State v. Paisley, 36 Mont. 237, 92 P. 566, 80 A.L.R.2d 1198.

The record shows that the appellant, after getting out of the car in front of his sister's house, went into the house. Officer Meeks testified that he was in a position to see both

the front and the side doors of the house. He further testified that after handcuffing Berryman to the car he entered the house to search for the appellant, but that he could not find him. There was a window open which faced the alley. The appellant was found some time later attempting to get into the trunk of a car parked out in the back of the house.

The appellant argues that the fact that he was found in the back yard is evidence that he did not intend to flee. As pointed out in 22A C.J.S. Criminal Law § 625, p. 467, with regard to "flight": "The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest. Such consciousness and the purpose is that which gives to the act of leaving its real incriminating character."

While the appellant did not flee very far, his actions in going out in the back yard and attempting to hide in the trunk of the car was evidence "tending to show, flight or escape". In the case of People v. Jack, 233 Cal.App.2d 446, 43 Cal.Rptr. 566, 573, it was stated: "The act of running away which constitutes a flight in law and thus affords a basis for an inference of consciousness of guilt [Citing authority.] requires neither a physical act of running nor a far-away haven."

The evidence is sufficient to support the giving of the instruction, it was a matter for the jury to accept or reject appellant's reasons for being in the back yard in the parked car. It was in the province of the jury to believe either that appellant was in fact looking for tools to fix a door between 5:00 and 5:30 A.M., a fews hours after a heavy drinking party, or to believe that the evidence showed or tended to show flight or escape by the appellant. It was the jury's task then to weigh the evidence accordingly. This they did!

We find no error which was prejudicial to the appellant.

Judgment affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and CASTLES concur.