The STATE OF MONTANA, Plaintiff and Respondent, *v.*
DAVID PRICE ARMSTRONG, Defendant and Appellant.

No. 11250.
Submitted May 8, 1967. Decided June 2, 1967.
Rehearing denied June 21, 1967.
428 P.2d 611.

I. James Heckathorn and C. Eugene Phillips (argued), Kalispell, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, Marshall Candee, County Atty., Libby, Charles M. Joslyn, Asst. Atty. Gen. (argued), Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal results from a conviction of petit larceny of copper telephone wire, together with two prior convictions.

At approximately 10:20 p. m. on March 20, 1966, the long distance operator at Libby was in the process of placing a call when the line went dead, the reason for the interruption of service became understandable to all concerned when it was discovered that some 4,800 feet of line was missing from its usual place on the poles.

Following the disruption of service, a service crew of two was dispatched. The service men left Libby about an hour after the interruption of service going North on Highway 37, and after checking at a repeater station located at Warland they were able to determine that the break was north of the repeater station. They then proceeded along the road with one man manning a spot light following the line while the other drove the service truck. At a point about one mile south of Big Creek the crew noted a slack in the line which indicated that they were in the area of the break and as they went around a curve in the road both men noted a vehicle headed in the opposite direction they were traveling. At about that time and just before they drew abreast of the vehicle it began to move and the lights on the vehicle were turned on. Both men noted that one headlight was out. They also noted that it was a GMC 4-wheel drive vehicle, light green or blue in color, not a late model, and that there were three people in its cab. At about that point on the road the crew got out and immediately saw that three spans of wire were laying on the ground; that some

of the pieces were cut and some of it was rolled up and more or less wadded up and thrown alongside the road. Too, it was noted that the line hanging from the pole was cut as high as a person might reach. These facts plus the rapidly departing vehicle naturally aroused their suspicions so they turned around and pursued the vehicle for some five to ten miles, but were never able to see it. However, they did call their manager who relayed the call to the sheriff's office along with the description of the vehicle. As a result of this call a state highway patrolman and a deputy sheriff were dispatched separately to search for the vehicle. The patrolman left at about 12:40 a. m. and the deputy sheriff sometime later. Both were instructed to look for a green GMC 4-wheel drive possibly a 1958 or 1959 model.

It should be noted that the Libby-Eureka road passes through an isolated forest area and that from this road there are few connecting roads other than logging roads leading to this main road. Travel on the road is infrequent and during the hours of this investigation there was practically none. The patrolman testified that he met only one vehicle in his travel from Libby to the area where he found the service crew, some 43 miles north of Libby. The deputy sheriff testified that he too had seen but one vehicle, and that it was not the GMC they were looking for. The patrolman after contacting the service crew headed back south in search of the vehicle in question and some 4 to 6 miles south of the scene of the wire cutting he encountered a GMC 4-wheel drive pickup, green in color, with one headlight out, headed north. He promptly stopped the vehicle, notified the deputy sheriff who was headed north to the scene that he had stopped the vehicle, and when the deputy got there he went back and brought the service men down and they identified the pickup as being similar to the one they saw leaving the area where the wire had been torn down and cut.

In the pickup there were three occupants, the appellant and a Mr. and Mrs. James R. Houchin, Jr.; Houchin was driving at

the time the pickup was stopped. In the rear of the pickup was a garbage can with copper wire in it that appeared to have been burned and some radiator and heater cores. These things were observed and testified to by the deputy sheriff, the patrolman and the service men. The occupants of the pickup were returned to Libby and the appellant and Houchin were charged with grand larceny with two prior convictions set forth on the information. While repairing the line one of the workmen found a button, at the scene of the cutting, that matched a button on one of the jackets of the men involved. The jacket was missing three buttons.

Upon completion of the repair of the telephone lines the service crew returned to Libby arriving between 6:00 a. m. and 7:00 a. m. On the way home they found a coil of wire along the road which was turned in to the sheriff's office and later introduced into evidence.

An investigation was made as to the ownership of the pickup and it was found to be in the name of L. B. Elletson of Kalispell who reported loaning it to Mr. Houchin. The pickup was brought to the sheriff's office where a search of the vehicle was made. In the search what is described as a horseshoe nipper was found behind the seat, and this nipper was introduced at the trial over the objection of appellant.

On the following morning two deputy sheriffs conducted a search for the remaining wire assisted by a statement given them by Mrs. Houchin. They went north on Highway 37 about 20 miles to a side road known as the Cripplehorse Creek road, and some 3 miles up the Cripplehorse Creek road they located about 4,100 feet of copper wire similar to that missing from the telephone lines. This wire had been dumped over a bank alongside the road. It is interesting to note that this side road is about halfway between Libby and the area where the wire was cut and is one if not the only side road located in that area.

This description of the facts is set forth in some length in order to facilitate our discussion of the legal objections raised.

The appellant's specifications of error are seven in number which will be set up as each are discussed or they will be grouped as hereinafter indicated.

(1)    The court erred in denying appellant's motion for a directed verdict or in the alternative, for the court to advise the jury to acquit.

(2)    The court erred in denying appellant's motion to suppress evidence.

(3)    The court separately erred in admitting each of the following items of evidence over appellant's objections:

    (a)    horseshoe nippers, State's Exhibit No. 7;

    (b)    roll of wire, State's Exhibit No. 5;

    (c)    roll of wire, State's Exhibit No. 8;

    (d)    the witness Fisher's testimony regarding information received from Martha Houchin;

    (e)    testimony relating to the value of copper wire in areas outside of the County of Lincoln, State of Montana, and of testimony as to value based on the original cost of an item; and

    (f)    in allowing Martha J. Houchin to be called as a witness.

(4)    The court erred in having the court reporter re-read the testimony given by the witness, John Fisher.

(5)    The court erred in submitting court's instruction 17 to the jury.

(6)    The court erred in submitting a verdict to the jury embracing the charge of grand larceny.

(7)    The court erred in giving instruction 4, 5 ,and 9.

■    To the appellant's first specification of error we find no error in the trial court's denial of a new trial. Granting that the evidence here is circumstantial the fact that it is circumstantial is not sufficient to justify a reversal of this verdict. State v. Cor, 144 Mont. 323, 396 P.2d 86.

■    "This court has consistently subscribed to the general rule 'that an application for a new trial on the ground that the

evidence is insufficient to justify the verdict, or that the verdict is contrary to the evidence, is addressed to the sound discretion of the trial court, and that, where there is simply a conflict in the evidence and the record contains substantial evidence, [as this record does], to support the verdict, the action of the court in denying the application will not be disturbed on appeal.' State v. Wilson, 76 Mont. 384, 391, 247 P. 158, 160." State v. Walker, 148 Mont. 216, 419 P.2d 300; State v. Schleining, 146 Mont. 1, 403 P.2d 625.

We do not agree with appellant's second specification of error that the trial court erred in failing to grant his motion to suppress all evidence based upon or obtained as a result of any written or oral confessions made by Martha J. Houchin.

It should be noted that even though Martha Houchin was in the vehicle when it was stopped that she was never charged with any crime by the county attorney. Too, that when called as a witness in this case she chose to take the fifth amendment and therefore did not testify concerning any facts though she filed, along with the appellant's motion to suppress, a self-serving affidavit concerning why she made the statement regarding the location of the missing wire. The record is bare of evidence showing that her rights were in any way violated.

Section 94-7206, R.C.M.1947, reads:

"When two or more persons are included in the same charge, the court may, at any time, before the defendants have gone into their defense, on the application of the county attorney, direct any defendant to be discharged, that he may be a witness for the state."

Here Mrs. Houchin had never been charged, hence the appellant's assertion that she was an accomplice or a principal is a presumption in which the county attorney did not indulge.

Montana has long followed the rule that if there is any infringement of rights, the only person who has standing to object to the use of illegally obtained evidence is the person whose rights have been infringed. Petition of Doe, 147 Mont.

322, 412 P.2d 212. This too, is the federal rule at least up to the time of this opinion. Wong Sun v. United States, (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Goldstein v. United States, (1942) 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312; Jacobs v. Warden, Maryland State Penitentiary, 367 F.2d 321 (4th Cir. 1966).

Appellant's third specification of error is subdivided into six subdivisions, some of which have already been answered by the previous discussions concerning the statement of Martha Houchin, others concerning the admission of various rolls of wire will be consolidated in our discussion, and last but not least appellant's objections to the admission of the horseshoe nippers will be discussed.

Coming to the merits of this specification that the court erred in not sustaining the motion to suppress this evidence, we find that the trial court properly allowed its admission into evidence. Appellant cites numerous cases, People v. Martin, 45 Cal.2d 755, 290 P.2d 855; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, however, these cases and others cited in support of his position do not hold that a person in similar circumstances as appellant has standing to object. Here, it must be emphasized that the appellant did not own the pickup involved. It was found after an investigation had been made to belong to a friend who had loaned the car to Houchin so the law officers involved had an obligation to protect not only the owner but also the county in inventorying the contents of the impounded pickup. In several recent cases, In re Petition of Doe, 147 Mont. 322, 412 P.2d 212, (supra) and State v. Nelson, 130 Mont. 466, 304 P.2d 1110, we have discussed these objections and find no merit to them.

In judging the admissibility of the evidence introduced we are guided by the principles recently enunciated by the U. S. Supreme Court in Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, where it was stated that the

evidence at issue, in order to be admissible, must be the product of a search, incident to a lawful arrest, since the officers had no search warrant. The lawfulness of arrest, without warrant, in turn, must be based on probable cause, which exists " 'where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' Brinegar v. United States, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949), quoting from Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)."

██ With this standard as a beacon, an examination of this record previously set forth shows that facts and circumstances existed at the time of the warrantless arrest sufficiently to allow probable cause. Too, the deputy sheriff and patrolman, having just cause had a duty not only to impound the pickup off the public highway for its own protection, but also to inventory the contents so that they would be safeguarded for the owner. Here from the time of the seizure of the pickup until the inventory at the sheriff's office, the pickup was in the lawful possession of the sheriff. In these circumstances the search without a warrant cannot be said to be "unreasonable."

Appellant's specification 3(e) will be discussed under specification 6.

██ To the appellant's fourth specification that the court erred in having the court reporter repeat certain testimony we find no error. It is within the trial court's discretionary power to grant a jury's request to re-read parts of testimony, and such procedure is authorized by statute.

Section 94-7304, R.C.M.1947, reads as follows:

"After the jury has retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon

being brought into court, the information required must be given in the presence of the county attorney and the defendant and his counsel."

Specifications 5 and 6 go to the value of the wire and will be jointly considered. Here there was adequate proof submitted showing that 4,100 feet of wire was taken, that it weighed approximately 141 pounds; that there was some 28 feet 6 inches per pound; and that the only value the recovered wire was to the telephone company was junk wire which would bring from 32 cents to 56 cents per pound in the five state area served by the company. Taking the most conservative figure, and realizing that no proof was submitted as to a local price if one existed, simple multiplication of 141 pounds by 32 cents equals $45.12. While the state failed to relate the latest junk price for wire to the date of the taking, we find no prejudicial error here due to the jury's finding appellant guilty of only petit larceny.

However, this court held in State v. Dimond, 82 Mont. 110, 113, 265 P. 5, 6, and it has been our law since that case that "The proof respecting the value of the property stolen was not altogether satisfactory, but it was sufficient to show that the articles in question were of some value. The other elements of the crime being proven, if the property stolen is shown beyond a reasonable doubt to be of value, the amount of the value becomes material only in determining the degree of which defendant is guilty. * * * If the value exceeds $50, he is guilty of grand larceny; if $50 or less, he is guilty of petit larceny. * * * It was not necessary to prove the value as alleged."

We find no error in the holdings of the court concerning these specifications.

Specification of error 7 goes to the giving of instructions 4, 5 and 9, all of which cover aspects of grand larceny. Having covered this in our discussion of specification 6 we conclude that there was sufficient evidence before the jury to have warranted a conclusion that the value of the wire was of a

480

greater value than fifty dollars and, therefore, no error was committed in giving instructions and a verdict form on grand larceny. However, appellant's conviction was only for petit larceny so no possible prejudice arose from the jury's findings.

The judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and DOYLE concur.