No. 87-427

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

DONOVAN KEITH HURLBERT,

        Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Phillips,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Daniel Donovan, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Paulson, Asst. Atty. General, Helena
        John C. McKeon, County Attorney, Malta, Montana

Submitted on Briefs: March 24, 1988

Decided: May 23, 1988

Filed: MAY 2 3 1988

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Donovan Keith Hurlbert (Hurlbert) appeals his conviction in Phillips County District Court of attempted deliberate homicide. We affirm.

Hurlbert was found guilty by a twelve person jury of attempted deliberate homicide in connection with a shooting incident in the parking lot of the Miner's Club Bar near Zortman, Montana on May 14, 1986. On May 13, 1986, twenty-eight year old Rex Martin (Martin) completed his work shift at a nearby mine and drove to the Miner's Bar to celebrate his birthday. Martin arrived at the bar shortly after four o'clock that afternoon and proceeded to consume beer and some schnapps. Twenty-two year old Hurlbert arrived at the Miner's Club Bar at approximately eight o'clock that same evening.

During the course of the evening at the Miner's Club Bar, Martin and Hurlbert argued several times about an incident that occurred in April of 1986 at the D-Y Bar located near Landusky, Montana. The April incident occurred while Hurlbert was working as a bartender at the D-Y Bar and involved Martin, Hurlbert, and several other bar patrons. The events of that April evening at the D-Y Bar culminated with Hurlbert and a bar patron forcibly evicting Martin from the bar. Martin's fingers were apparently severely smashed when a bar patron slammed the bar doors shut on one of Martin's hands. Martin re-entered the D-Y Bar long enough to accuse Hurlbert of causing the hand injury and to threaten retaliation. Martin's actions that April evening prompted the D-Y Bar's owner to ask Martin not to patronize the bar for thirty days. Martin later learned that Hurlbert was not responsible for the injury to his hand.

Sometime after one o'clock in the morning of May 14, 1986, and after more than five hours of drinking for both men, Hurlbert and Martin appeared to have settled their differences. The two men shook hands and each drank a beer purchased by Hurlbert. Martin then purchased a six-pack of Rainier, his favorite beer, for the road and the two men left within minutes of each other. Conflicting trial testimony was presented as to what happened outside of the bar. Martin testified that he walked to his pickup truck and was "fumbling" for his keys when he noticed Hurlbert motion for him to come over to Hurlbert's pickup truck. Martin testified that as he approached, Hurlbert entered his pickup, grabbed a twelve gauge shotgun from the seat, exited the pickup, turned and pointed the shotgun at Martin's abdomen. Martin contends that, as he turned to his right to flee, his flight was obstructed by the driver's side door of Hurlbert's pickup truck. Martin testified that Hurlbert fired the shotgun before he could turn around to run in the opposit direction.

Hurlbert testified that Martin followed him to the driver's side of Hurlbert's pickup where the two men resumed their argument about the D-Y Bar incident as Hurlbert unlocked and opened the driver's side door. According to Hurlbert, Martin grabbed Hurlbert, threw him aside, and reached in and grabbed Hurlbert's shotgun from the gun rack in the back window of Hurlbert's pickup. In the ensuing struggle for control of Hurlbert's shotgun, Hurlbert contends that the shotgun accidentally discharged.

After the shot, the Miner's Club bartender, Betty Veltri (Veltri), and a patron, Dain Hathaway (Hathaway), ran outside to find Martin shuffling back into the bar with bleeding arms. Veltri testified that she heard Martin exclaim "he (Hurlbert) shot me, he shot me." Veltri also testified that

3

she had a short conversation with Hurlbert who, when asked what happened, exclaimed "he (Martin) tried to shoot me." Hurlbert testified that he also told Veltri to inform the sheriff's deputies when they arrived that he would be at the D-Y Bar. Veltri did not remember Hurlbert saying where he was going. Hathaway remembers Hurlbert and Veltri talking but does not remember what was said. All the witnesses agreed that Hurlbert left the Miner's Club parking lot in a hurry. Martin was seriously injured by the shotgun blast and his arms are permanently impaired and disfigured.

The D-Y Bar is approximately twenty miles from the Miner's Club Bar. Upon arriving at the D-Y Bar, Hurlbert told the bartender, Debbie Baker, that Martin had tried to shoot him and that the shotgun discharged accidentally in the struggle for control. Hurlbert then called the Phillips County Sheriff's office to report an accidental shooting and to inform them of his whereabouts. The sheriff's deputies investigated the crime scene for three hours before going to the D-Y Bar to arrest Hurlbert. During that time, Hurlbert telephoned the Miner's Club Bar several times to find out when the deputies would arrive at the D-Y Bar. When arrested, Hurlbert voluntarily gave the sheriff's deputies a statement about his involvement in the shooting incident.

Martin was severely injured in the lower portions of his left and right forearms and has incurred over $90,000 in medical expenses as a result of the shooting. In its amended information of September 3, 1986, the State of Montana (the State) accused Hurlbert of attempted deliberate homicide with a dangerous weapon pursuant to § 45-5-102(1)(a), § 45-4-103, and § 46-18-221, MCA. Hurlbert pled not guilty and gave the State notice that he intended to present evidence of justifiable use of force as a defense.

4

A jury trial commenced on February 9, 1987, and culminated with Hurlbert's conviction on February 12, 1987. On June 10, 1987, the District Court sentenced Hurlbert to fifteen years confinement in the Montana State Penitentiary for attempted deliberate homicide with an additional five years to be served consecutively for the use of a dangerous weapon. The District Court suspended eight years of Hurlbert's twenty year sentence, designated him a non-dangerous offender, and recommended that he be allowed to serve the balance of his confinement at the Montana Department of Institutions' Swan River Forest Camp. Hurlbert appeals from the judgment and sentence imposed upon him and raises the following issues for our review:

1. Did Hurlbert receive effective assistance of counsel?

2. Did the District Court err in instructing the jury on the issue of "flight" from the scene of the crime?

In his first issue, Hurlbert alleges that his defense counsel was ineffective for the following reasons:

1. Defense counsel failed to effectively test the credibility of the State's witnesses.

2. Defense counsel failed to offer instructions on the theory of the defense.

3. Defense counsel did not adequately prepare for the sentencing hearing.

This Court reviews issues of ineffective counsel under the standards set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. State v. Johnson (Mont. 1986), 719 P.2d 771, 773, 43 St.Rep. 913, 916. The Strickland standards are that the defendant must first "show that counsel's performance was deficient," and then must

5

"show that the deficient performance prejudiced the defense."
Strickland, 466 U.S. at 687. We have reviewed numerous claims of ineffective counsel under a myriad of circumstances and recognize that the burden is heavy on a defendant who seeks to reverse a judgment on such grounds. State v. LaValley (1983), 203 Mont. 393, 398, 661 P.2d 869, 872.

To begin with, this Court will not second guess the trial tactics of defense counsel. State v. Tome (Mont. 1987), 742 P.2d 479, 482, 44 St.Rep. 1629, 1632; State v. Brown (Mont. 1987), 741 P.2d 428, 430, 44 St.Rep. 1462, 1464. Furthermore, a claim of ineffective counsel must be grounded in facts found in the record, not on "mere conclusory allegations." Tome, 742 P.2d at 482. Defense counsel's use of objections during trial lie within his or her sound discretion and failure to object must, in addition to being error, also prejudice the defendant. Brown, 741 P.2d at 430; State v. Probert (Mont. 1986), 719 P.2d 783, 786, 43 St.Rep. 988, 992.

In adopting the Strickland standards, we also recognized that any alleged error by defense counsel must be shown to prejudice the defendant before reversal will be warranted. State v. Robbins (Mont. 1985), 708 P.2d 227, 43 St.Rep. 1440 (citing Strickland). Robbins sets forth what the defendant must show in order to establish prejudice:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of a proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Robbins, 708 P.2d at 232.

Defense counsel's decision not to extensively cross-examine certain witnesses in this case was a tactical

6

decision within his discretion. Hurlbert contends that defense counsel should have cross-examined Martin as to his version of the shooting to point out improbable, inconsistent and confusing facts in Martin's story. However, defense counsel sufficiently attacked Martin's testimony in his closing argument. Defense counsel also solicited evidence from Hurlbert and other witnesses that tended to conflict with Martin's story. We recognize that it is sometimes a more prudent trial tactic to indirectly attack a witness' testimony through the testimony of other witnesses and in closing arguments rather than to put undue emphasis on one witness' version with extensive cross-examination. Whether defense counsel consciously chose one of the above methods over the other as a trial tactic is not only subject to speculation, but is also immaterial to the issue of his performance at trial. The bottom line is that Hurlbert was not prejudiced because defense counsel did an adequate job in pointing out the difference between Martin's testimony and Hurlbert's testimony in his closing argument and through the testimony of other witnesses. In the final analysis, it was for the jury to decide whose story was plausible and believable. Any shortcomings in Martin's testimony could either have been readily apparent to the jury or were sufficiently pointed out by defense counsel during the course of the trial.

Hurlbert next contends that defense counsel erred in not submitting a "justifiable use of force" or "self defense" instruction to the jury. Hurlbert gave notice before trial of his intention to submit evidence of justifiable use of force. During the settling of jury instructions, defense counsel refused to submit a proposed instruction regarding justifiable use of force even though both the State and the District Court appeared receptive to such an instruction.

The record reflects that defense counsel believed that the defenses of accident and justifiable use of force were inconsistent with each other and that a justifiable use of force instruction was inconsistent with the evidence. Defense counsel again exercised his tactical discretion and elected to defend on a theory of accidental shooting.

Hurlbert argues that defense counsel was mistaken in his belief that accident and justifiable use of force are inconsistent defenses that cannot be argued simultaneously. In response, the State points out that the evidence does not support a justifiable use of force instruction and contends that defense counsel's decision not to rely on such a defense does not constitute ineffective assistance. We agree with the State. The evidence presented at trial clearly shows that Hurlbert could not have reasonably believed that he was justified in using force likely to cause death or serious bodily harm (shooting Martin with a twelve-gauge shotgun). See §§ 45-3-101 et seq., MCA (statutes governing justifiable use of force). Defense counsel's refusal of an instruction based on a defense not supported by the record did not deny Hurlbert effective assistance of counsel. State v. Docken (Mont. 1986), 720 P.2d 679, 680, 43 St.Rep. 1058, 1061.

As to Hurlbert's third contention of error regarding defense counsel's lack of skill, we are not convinced that defense counsel committed any error nor are we convinced that Hurlbert was prejudiced. Hurlbert alleges that defense counsel should have challenged two members of the jury panel for cause because these people were related by marriage to one of the investigating sheriff's deputies. However, the State is correct in its assertion that this particular relationship to an investigating officer is not sufficient, absent a showing of impartiality, to challenge for cause. State v. Hendricks (1976), 171 Mont. 7, 11, 555 P.2d 743,

8

746; § 46-16-304, MCA. The State's attorney questioned each of the two individuals as to whether their relationship to the investigating officer would prohibit them from being fair and impartial jurors. Each person answered that they would be fair and impartial. One of the prospective jurors that Hurlbert now complains about was not chosen to be a juror. The other person was a juror, but Hurlbert has failed to show any impartiality or resultant prejudice associated with this person's deliberations.

Hurlbert also questions the impartiality of a third juror who, before voir dire had commenced, indicated to the judge that she might be opinionated. This juror was cut off in mid-sentence by the judge who indicated that she should wait for voir dire. Defense counsel later questioned this woman and discovered that, while she knew Rex Martin's parents, she still felt she could be impartial. Again, defense counsel was not ineffective in not challenging a juror for cause where no partiality or prejudice has been shown.

The remainder of Hurlbert's assertions of error regarding defense counsel's trial skills deal with alleged failure to object and failure to adequately cross-examine witnesses. These alleged "failures" could just as easily be classified as discretionary trial tactics. We reiterate that defense counsel's use of objections is within his discretion as trial tactics. Brown, 741 P.2d at 430; Probert, 719 P.2d at 783. More importantly, Hurlbert has failed to show any resultant prejudice. We will not second guess defense counsel's tactics absent a showing of prejudice.

In his final contention of ineffectiveness, Hurlbert asserts that defense counsel did not adequately prepare for the sentencing hearing. Hurlbert first alleges that defense counsel failed to marshall essential evidence to convince the

District Court that Hurlbert should be sentenced to a jail-based work release sentence. The State insists that the record of the sentencing hearing indicates that defense counsel prepared extensively for the hearing and presented adequate testimony and evidence regarding a jail-based work release program. Our review of the record indicates that the State is correct and that defense counsel was not ineffective at the sentencing hearing.

Hurlbert also argues that defense counsel was ineffective at the sentencing hearing because he failed to challenge the applicability of mandatory minimum sentencing. The State argued at the sentencing hearing that the mandatory minimum sentence for the offense of deliberate homicide (ten years) applied to the offense of attempted deliberate homicide. Defense counsel challenged the State's position in this regard on different grounds than those now argued by Hurlbert on appeal. Again, we refuse to second-guess defense counsel's trial tactics.

Hurlbert also requests that we remand for resentencing on the grounds that the District Court erred in believing that a mandatory minimum sentence applied. We note that perpetrators of attempt crimes may be sentenced up to the maximums provided for the offense attempted. Section 45-4-103(3), MCA. We review sentences for legality only and will not disturb a District Court's sentencing decision absent a showing that the District Court abused its discretion. State v. Almanza (Mont. 1987), 746 P.2d 1089, 1090-91, 44 St.Rep. 2064, 2067. Hurlbert's sentence is well within the legal limits for the offense charged and we will not remand for resentencing as he has asked on this appeal. Having found no evidence of defense counsel's ineffectiveness or prejudice to Hurlbert, we hold that Hurlbert received effective assistance of counsel.

10

In his final issue, Hurlbert argues that the District Court erred in giving the following jury instruction:

> You are instructed that you may take into consideration any testimony showing, or tending to show, flight or concealment by the defendant. The testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and the significance, if any, to be attached to it, are matters for the jury to determine.

Defense counsel objected to the use of this instruction at trial on the grounds that the uncontradicted evidence was that Hurlbert made no attempt to leave or conceal his whereabouts for the purpose of evading arrest.

The above instruction is almost identical to the instruction this Court approved in State v. Walker (1966), 148 Mont. 216, 225, 419 P.2d 300, 305. As in Walker, the evidence in the instant case was sufficient to support the giving of the instruction on flight. Hurlbert contends that he did not attempt to evade arrest as evidenced by his telling Betty Veltri where the sheriff's deputies could find him and by his repeated telephone calls to the Miner's Club Bar from the D-Y Bar. However, as was the case in Walker, it was a matter for the jury to decide whether it believed Hurlbert's explanation for leaving the scene of the crime. Walker, 419 P.2d at 306. Hurlbert admitted leaving the Miner's Club Bar after the shooting and several witnesses testified that he left in a hurry. We hold that the District Court did not commit reversible error in giving the instruction on "flight" based on the evidence in this case.

Hurlbert has failed to show that defense counsel was ineffective according to the standards set forth in Strickland. His sentence was within the legal limits for the

11

offense and was not an abuse of the District Court's discretion. the evidence tended to show that Hurlbert left the scene of the crime and the jury was properly instructed on the issue of "flight." Accordingly, we affirm the District Court's judgment and sentence as to all issues presented on this appeal.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices