No. 89-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

          Plaintiff and Respondent,

     -vs-

ALAN BARRY HENDERSON,

          Defendant and Appellant.


APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Joel Roth, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

          Billy B. Miller, Great Falls, Montana

          For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
          Patrick Paul, Cascade County Attorney, Great Falls,
          Montana
          Tammy Plubell, Deputy, Great Falls, Montana


                    Submitted on Briefs:  April 5, 1990

                              Decided: May 1, 1990

Filed:

_____
                          Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

On May 2, 1989, a jury empaneled in the District Court of the Eighth Judicial District, Cascade County, found the defendant and appellant, Alan B. Henderson, guilty of the charge of sexual assault, a felony, in violation of § 45-5-502, MCA. The District Court sentenced the defendant to the Montana State Prison for a period of twenty years. The defendant was designated a "non-dangerous" offender. Ten years of the sentence were suspended provided that the defendant follow certain conditions prescribed by the Court. The defendant was given credit for time served. The defendant appeals his conviction. We affirm.

The sole issue presented on appeal is whether the defendant was denied his constitutional right to effective assistance of counsel.

In the early evening of May 1, 1988, Susan Santiago took her two children, Anthony and Aaron, to the home of Annette Daniels, the defendant's sister. At the time Anthony was six years old and Aaron was nineteen months old. Annette's two children, Pierre Poitra, age 13, and Daniel Henderson, age 14, were to babysit the Santiago children that evening. Annette and her boyfriend, Will, were not home that evening.

It is unclear from the testimony of the witnesses what exactly happened that evening. However, the following day, one of the babysitters, Pierre, approached Susan and asked her if Anthony had told her anything. After discussing the matter with Pierre, Susan called the Great Falls Police Department and then asked her son, Anthony, what had happened at the Daniels' home the prior evening.

Anthony told Susan that while he was at the Daniels' home, the uncle of Pierre and Daniel, the defendant, had visited. While there, the defendant allegedly had taken Anthony down into the basement of the home where he forced Anthony to perform oral sex.

2

At trial, Anthony took the stand and testified as to the defendant's alleged activities. Anthony testified that the defendant stopped at the Daniels' home that evening. While the defendant, Anthony, Pierre and Aaron were watching television, the defendant asked Anthony to accompany him to a bedroom. In that bedroom, the defendant and Anthony looked at "dirty or nasty" magazines. After a while, the defendant asked Anthony to accompany him into the basement. In the basement Anthony testified that the defendant pulled down Anthony's pants and did the same to his own. The defendant then forced Anthony to perform oral sex. Anthony testified that after the alleged incident the defendant told Anthony to say that they had just gone for a walk around the block. The defendant and Anthony then left through a back door and reentered the home through the front door.

Pierre testified that most of the evening was spent watching television in the living room. He also testified that the defendant had stopped by the home that evening but was never alone with Anthony.

Daniel testified that most of the evening was spent watching television in the living room. He also testified that the defendant stopped by that evening but was only alone with Anthony for approximately five minutes. During these five minutes the defendant and Anthony left together through the front door.

The defendant took the stand on his behalf and testified that he was not at the home of Annette Daniels that evening and, therefore, could not have sexually molested Anthony. He testified that the entire evening he was drinking at the home of another sister, Silvia Gardipee. His whereabouts that evening was supported by Silvia's testimony and the testimony of Annette Daniels, who was allegedly at Silvia's home that evening as well.

On May 1, 1988, after listening to all of the testimony, the jury convicted the defendant of sexual assault.

The only issue on appeal is whether the defendant's constitutional right to effective assistance of counsel was

3

violated. The defendant argues that his counsel did not protect his constitutional right by failing to pursue Pierre's testimony that defendant was never alone with Anthony the evening of May 1, 1988. However, the defendant has not shown that, in light of all the facts of this case, the failure by counsel to pursue this testimony was prejudicial to his defense, thereby violating his constitutional right.

A defendant is guaranteed the right to effective assistance of counsel by the constitutions of both the United States and Montana. U.S. Cont. Amend. VI; Mont. Const. Art. II, § 24 (1972). The case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) established the federal standard against which the protection of this right is evaluated. We adopted this federal standard in the case of State v. Hurlbert, 232 Mont.115, 756 P.2d 1110 (1988). The standard adopted in Hurlbert is whether "counsel's performance was deficient and ... that the deficient performance prejudiced the defense." Hurlbert, 232 Mont. at 119, 756 P.2d at 1112-1113, citing Strickland. In State v. Coates, 786 P.2d 1182, 47 St.Rep. 328 (Mont. 1990), this Court discussed how to implement this standard:

> First...to assess deficient performance, this Court employs the "'reasonably affective assistance' test of whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases." (Citations omitted.) Second, counsel's deficient performance must have so prejudiced the defendant as to deprive the defendant of a fair trial. (Citations omitted.) The standard for evaluating prejudice is whether a reasonable probability exists that but for counsel's deficient performance, the trial's outcome would have been different.

Coates, 786 P.2d at 1185, 47 St.Rep. at 332.

Generally, trial tactics are not sufficient to show deficient performance. Hurlbert, 232 Mont. at 120, 756 P.2d at 1113. In this case, it is evident from the record that defense counsel made

4

a tactical decision to pursue the alibi defense and to limit discussion of Pierre's testimony to her closing.

Defense counsel called Annette Daniels, Silvia Gardipee, and the defendant to support the alibi defense that the defendant was not at the Daniels' home the evening of May 1, 1988. Each witness was questioned in depth. Later in the trial, the conflicting testimony of the two babysitters, Pierre and Daniel, was argued by defense counsel in her closing. Defense counsel chose, as a tactical matter, to bring these conflicts to the awareness of the jury in her closing argument rather than through cross-examination. In her closing, defense counsel argued that the jury must consider Pierre's testimony that the defendant and Anthony were never alone together. Defense counsel argued:

> The state would have you believe parts of their witnesses' testimony and not others, such as, you know, the state's witness, Pierre Poitra. He was not absolutely sure of the date. He was sure that Alan [defendant] was not in the bedroom with Anthony. And you will recall that Anthony said he was in the bedroom with this person looking at dirty magazines before he took him in the basement. . . . While Pierre is related to Daniel Henderson, Pierre has nothing to gain or lose from the outcome of this case. He indicated to you that he didn't believe his brother Daniel was there at the time. Daniel also indicated to you he was not real sure of the date. He was positive that his uncle did not go in the bedroom with Anthony Sanitago. And he also indicated that his uncle had been there briefly. (Emphasis added.)

Further, defendant has not shown that defense counsel's failure to question Pierre prejudiced his defense. In Coates, as in this case, the defendant argued that defense counsel failed to

5

properly question witnesses. This court rejected Coates' argument by stating:

> Although appellant argues that Mr. Goldman should have asked certain questions, appellant again fails to establish exactly how those questions would have materially assisted his defense.

Coates, 786 P.2d at 1186, 47 St.Rep. at 334.

In this case, defendant has also failed to show how the questions he feels should have been asked by defense counsel would have materially assisted his case. Defense counsel actively pursued the alibi defense. Defense counsel referred to the testimony of the two babysitters in her closing and emphasized that, although both babysitters stated that the defendant was at the Daniels' home the evening of May 1, 1988, they also stated that the defendant was never alone with Anthony. The only testimony that directly incriminated the defendant was the testimony of the victim, Anthony. The jury chose to give this testimony great weight in reaching their decision. See generally State v. Roberts, ___ Mont. ___, 633 P.2d. 1214, (1981), where the jury resolved the issue of conflicting evidence by giving the State's witnesses greater credibility.

There is no support for the defendant's contention that the further questioning of Pierre by defense counsel would have altered the jury's emphasis on Anthony's testimony given. Further, defense counsel did argue the discrepancies in Pierre's testimony to the jury. The facts of this case indicate that additional questioning

6

of Pierre by defense counsel would not have materially altered the trial's outcome.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices