NO. 95427

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

       Plaintiff and Respondent,

  v

TODD CAMPBELL,

       Defendant and Appellant.


APPEAL FROM:   District Court of the Tenth Judicial District,
               In and for the County of Fergus,
               The Honorable Roy C. Rodeghiero, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           Vicki Knudsen, Attorney at Law, Roundup,
           Montana

       For Respondent:

           Hon. Joseph P. Mazurek, Attorney General,
           Patricia J. Jordan, Ass't Attorney General,
           Helena, Montana

           Thomas P. Meissner, Fergus County Attorney,
           Lewistown, Montana

**FILED**

Filed: SEP 12 1996

*Ed Smith*
CLERK OF SUPREME COURT.
STATE Of MONTANA

Submitted on Briefs: July 11, 1996

Decided: September 12, 1996

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Todd Campbell (Campbell) appeals from the judgment and sentence entered by the Tenth Judicial District Court, Fergus County, on jury verdicts finding him guilty of two counts of sexual intercourse without consent and one count of sexual assault. We affirm.

We address the following issues on appeal:

1. Did the District Court err in denying Campbell's motion to suppress his confession?

2. Was Campbell's confession supported by independent corroborating evidence?

3. Did the District Court abuse its discretion in denying Campbell's motion for a directed verdict of acquittal?

4. Was Campbell denied effective assistance of counsel?

5. Did the District Court err regarding either its order for a psychological examination or a determination that Campbell was indigent?

In late 1992, the Montana Department of Family Services (DFS), now the Department of Public Health and Human Services, received several complaints of parental neglect regarding L.D., A.D. and M.M., ages six, four and two, respectively. It removed the three girls from their mother's home and placed them in foster care on January 28, 1993. While in foster care, the children displayed behavior and made statements indicating that they may have been sexually abused.

Jim Simonich (Simonich), a DFS social worker, reported the suspected abuse to the Lewistown Police Department (LPD) in February of 1993. Simonich also made arrangements for the girls to

2

be examined by Dr. Nancy Maynard, a Great Falls pediatrician who specializes in conducting physical examinations in suspected child sexual abuse cases. Dr. Maynard examined the children on March 11, 1993, and found physical evidence that L.D. and A.D. had been sexually abused. Her examination of M.M. did not reveal any conclusive physical evidence of sexual abuse.

Officer David Sanders of the LPD began investigating Simonich's report that the children may have been sexually abused. During his investigation, Officer Sanders spoke with the children's maternal grandmother, who mentioned that Campbell had babysat the children on various occasions. She indicated that she felt uncomfortable when Campbell was around the children and that she suspected that Campbell may have had sexual contacts with the girls.

Officer Sanders telephoned Campbell on April 25, 1993, and made arrangements for an in-person interview; he did not tell Campbell what the interview would be about. When Campbell arrived at the police station for the interview two days later, Officer Sanders took him into an interview room and proceeded with an interview which lasted approximately one and one-half hours. During the interview, Campbell made oral admissions and also wrote a statement confessing to sexual offenses against each of the three girls. He recanted his confession later that day.

The State of Montana (State) subsequently charged Campbell with two counts of sexual intercourse without consent, involving L.D. and A.D., and one count of sexual assault, involving M.M.

Campbell moved to suppress his written confession and the oral admissions made to Officer Sanders. After an evidentiary hearing, the District Court denied the motion to suppress.

A jury trial was held in June of 1994, and the jury found Campbell guilty of all three charges. The District Court sentenced him to ten years in prison, with eight years suspended, on each charge, and ordered that the sentences run concurrently. Campbell appeals and is represented by new counsel on appeal.

1. Did the District Court err in denying Campbell's motion to suppress his confession?

Campbell moved to suppress both the written confession and the oral admissions (collectively, the confession) made to Officer Sanders during the interview on the basis that they were involuntary. He argued that he did not understand the meaning or consequences of his confession because of his low mental capabilities and also that the officer used improper tactics during the interview.

The District Court denied Campbell's motion to suppress. It found that Officer Sanders' testimony regarding what happened during the interview was more credible than Campbell's and determined, on that basis, that no improper police tactics were used during the interview. The court also found that, although Campbell did have a low intelligence quotient (I.Q.), his confession was made voluntarily. The District Court noted that Campbell had no problems hearing and responding to questions when he testified and that his responses were coherent. The court also

4

found that Campbell exhibited the ability to recall past events and that his vocabulary was "greater than he was willing to admit."

When a defendant moves to suppress a confession on the basis that it was involuntarily given, the prosecution must prove by a preponderance of the evidence that the confession was voluntary. Section 46-13-301, MCA. This Court reviews a district court's findings of fact on a motion to suppress to determine whether those findings are clearly erroneous. State v. Loh (Mont. 1996), 914 P.2d 592, 601, 53 St.Rep. 226, 232. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court has a definite or firm conviction that the district court committed a mistake." Loh, 914 P.2d at 601 (citation omitted). It is within the province of the trial court to determine the credibility of witnesses and the weight to be given their testimony during a hearing on a motion to suppress and we do not review those determinations. State v. Gould (1985), 216 Mont. 455, 466, 704 P.2d 20, 27-28 (quoting State v. Grimestad (1979), 183 Mont. 29, 37, 598 P.2d 198, 203).

The voluntariness of a confession is a question of fact which must take into account the totality of the circumstances under which the confession was made. Loh, 914 P.2d at 601. The totality of the circumstances includes, but is not limited to, the defendant's age and level of education; the interrogation technique used by the police; whether the defendant was advised of his or her Miranda rights; the defendant's prior experience with the criminal

justice system; the defendant's background and experience; and the defendant's demeanor, coherence, articulateness, and capacity to make full use of his or her faculties. Loh, 914 P.2d at 601-602.

In the instant case, both Officer Sanders' testimony and other evidence regarding the totality of the circumstances in which Campbell's confession was made support the District Court's finding that the confession was voluntary and, therefore, that the State had met its burden under § 46-13-301, MCA. Campbell was 22 years old when interviewed by Officer Sanders; he had completed the tenth grade with the help of special education classes and subsequently received his GED. Campbell's full-scale I.Q. is 81, which is less than what is considered the normal range, but is not so low as to constitute mental retardation.

Campbell arrived at the LPD with his mother at approximately 6:00 in the evening and was taken to an interview room by Officer Sanders. Officer Sanders told Campbell that he was not under arrest, that he could leave at any time and that he did not have to answer any questions. The officer then began to read a Miranda rights form but was interrupted by other business. He asked Campbell to remain in the interview room until he returned, at which time he resumed reading the Miranda rights form. Officer Sanders testified--and the rights form indicated--that Campbell signed the statement of rights form in the space indicating that he understood his rights; Campbell also signed the form in the space which indicated that he had read the statement of rights, understood what his rights were, and was voluntarily waiving his

right to a lawyer and his right to remain silent. Both signatures were witnessed by Officer Sanders. According to the officer, Campbell also verbally stated that he understood the statement of rights.

At that point, Officer Sanders began to question Campbell regarding whether he knew the three girls and their mother. Campbell responded that he did know them and that he had babysat the girls. Officer Sanders then told Campbell that an investigation was under way regarding incidents of sexual abuse against the girls and that the investigation indicated that Campbell might be involved. Campbell initially denied having any sexual contact with the girls but, as the interview progressed, he admitted that he had sexual intercourse with the two older girls and sexual contact with the youngest one. During the interview, Campbell described various incidents that occurred with each of the girls and how the girls reacted.

After Campbell made these disclosures, Officer Sanders asked him if he would make a written statement outlining what he had said during the interview. Officer Sanders brought out a form and explained to Campbell that it was a voluntary statement form. The officer testified that he read the form, including another statement of rights, to Campbell and explained that he did not have to make a statement. Campbell then filled in his name and the date, time, and location of the interview, and wrote out a statement confessing to sexually abusing the girls.

Officer Sanders testified that he did not threaten Campbell during the interview or otherwise try to intimidate Campbell into confessing, and that he made no promises to Campbell regarding leniency from either the prosecution or the court if Campbell confessed. The officer stated that Campbell appeared to understand his rights, was able to converse coherently and never indicated that he wished to stop the interview or leave the room. Officer Sanders stated that the LPD had a policy of not taping interviews by audio or video means because it usually makes the interviewee nervous and less likely to talk openly.

Campbell's version of the interview differed markedly. He testified that Officer Sanders was threatening during the interview, yelled at him repeatedly, and promised to make it easy for him with the county attorney if he confessed. Campbell also testified that Officer Sanders told him what to write in the confession and even told him how to spell some of the words. Although he agreed that he signed the Miranda rights form, Campbell maintained that Officer Sanders did not finish reading the statement of rights to him after the interruption and that he did not understand his rights or realize that he could terminate the interview. He also asserted that he did not have his glasses with him at the interview and could not read the statement of rights and voluntary statement forms; on cross-examination, however, he testified that he had been without his glasses for approximately two years prior to the interview and could drive his car without his glasses.

Campbell contends that we must view Officer Sanders' testimony with suspicion and that his own testimony was sufficient to preclude the State from meeting its statutory burden of establishing that his confession was voluntary by a preponderance of the evidence. We disagree.

As discussed above, the District Court accepted Officer Sanders' testimony regarding the interview. Credibility determinations regarding witnesses who testify on a motion to suppress a confession are solely within the province of the trial court. Gould, 704 P.2d at 27-28. Moreover, the preponderance of the evidence standard required by § 46-13-301, MCA, is for the trial court--not this Court--to determine. In making that determination, the trial court assesses credibility and weighs contradictory evidence; we do not review such matters. Gould, 704 P.2d at 28. Campbell also urges that, even if his version of the interview were discounted entirely, it is "doubtful" that he understood his Miranda rights and the ramifications of signing the rights form. The extent of Campbell's understanding goes directly to whether his confession was voluntary and voluntariness is the central question of fact to be determined by the trial court under the totality of the circumstances test. See Loh, 914 P.2d at 601. Here, the District Court weighed the evidence, assessed the credibility of Campbell and Officer Sanders and found that the confession was voluntary.

We conclude that substantial evidence regarding the totality of the circumstances surrounding Campbell's confession supports the

9

District Court's finding that Campbell's confession was voluntary, and that finding is not otherwise clearly erroneous. We hold, therefore, that the District Court did not err in denying Campbell's motion to suppress his confession.

2. Was Campbell's confession supported by independent corroborating evidence?

Campbell argues that his extrajudicial confession was not supported by independent corroborating evidence and, therefore, that his conviction of the offenses of sexual intercourse without consent and sexual assault cannot stand; the only authority to which he cites is Montana Criminal Jury Instruction 1-018. Neither the instruction nor the applicable statute supports his position.

In pertinent part, the District Court instructed the jury as follows regarding admissions and confessions:

> A confession, as applied in criminal law, is a statement by a person made after the offense was committed that he committed or participated in the commission of a crime. An admission is a statement made by the accused, direct or implied, of facts pertinent to the issue and tending <u>in connection with proof of other facts</u> to prove his guilt. <u>A conviction cannot be based on an admission or confession alone.</u>

(Emphasis added.) The instruction was patterned on Montana Criminal Jury Instruction 1-018.

Campbell contends that, absent his confession, there was "absolutely no evidence to connect [him] to the commission of those offenses other than the fact that he babysat L.D., A.D. and M.M., at the request of their mother . ." He apparently argues in this regard that the State did not present "proof of other facts" regarding the offenses of sexual intercourse without consent

10

against L.D. and A.D. and sexual assault against M.M. as required by the instruction.

Other statements in Campbell's briefs, as well as evidence of record, belie his contention in this regard. Campbell admits that evidence indicates that the offenses with which he was charged were committed. Further, he admits that, having babysat the children, he had the opportunity to commit the offenses. Thus, the record contains "proof of other facts" which, with his admissions and confession, tend to prove his guilt. The language of the instruction requires no more and Campbell cites to no authority suggesting otherwise.

Moreover, the law relating to independent corroborating evidence is contained in § 46-16-215, MCA. Section 46-16-215, MCA, provides that "[b]efore an extrajudicial confession of the defendant to the crime charged may be admitted into evidence, the prosecution shall introduce independent evidence tending to establish the commission of the crime charged." The plain language of the statute requires only that the prosecution present independent evidence tending to establish that the crime was committed, not that the defendant committed it. Such independent evidence was presented here.

Dr. Maynard's videotaped deposition regarding her physical examination of the three girls was admitted into evidence at Campbell's trial. Dr. Maynard testified that, upon examining L.D. and A.D., she found that each had scar tissue on the hymen which would only have resulted from direct penetration into the vaginal

11

area; in her opinion, such direct penetration was highly unlikely to have occurred accidentally. Dr. Maynard also stated that the condition of the scar tissue indicated that there had been multiple penetrations. Regarding her examination of M.M., Dr. Maynard was unable to state conclusively whether M.M. had been sexually abused, but she did testify that there were no physical findings of any penetration of the vagina.

Marla North, a therapist specializing in the treatment of sexual abuse victims and offenders who had conducted an assessment of L.D., A.D. and M.M. at DFS' request, also testified for the State. Ms. North testified that all three girls exhibited behaviors consistent with having been sexually abused. In addition, both L.D. and M.M. told Ms. North that they had been abused. In Ms. North's opinion, all three girls had been sexually abused. Evidence also established, as a matter of law, that the girls were incapable of consenting to the sexual intercourse and sexual assault because of their ages and, therefore, the "without consent" element of the crimes was proven. See §§ 45-5-503, 45-5-501, and 45-5-502, MCA.

The above-referenced evidence is entirely independent of Campbell's confession and meets the requirement of § 46-16-215, MCA, that such independent evidence tend to establish the commission of the offenses of sexual intercourse without consent against L.D. and A.D., and of sexual assault against M.M. We conclude that sufficient independent corroborating evidence supported Campbell's confession in this case.

12

3. Did the District Court abuse its discretion in denying Campbell's motion for a directed verdict of acquittal?

Campbell moved for dismissal of the charges or a directed verdict of acquittal under § 46-16-403, MCA. He contended that no evidence connected him to the commission of the offenses except for his confession, that the State failed to provide corroborating evidence for that confession and, therefore, that there was insufficient evidence to go to the jury. The District Court denied Campbell's motion. On appeal, Campbell argues that the court should have granted the motion because, although sufficient evidence established that the offenses had been committed, no evidence other than the confession proved beyond a reasonable doubt that he committed them.

This argument is, in large part, a repackaging of Campbell's contention in Issue 2 that his confession was not sufficiently corroborated. We rejected that contention above, concluding that the State presented sufficient independent evidence to corroborate Campbell's confession to the offenses charged.

A trial court should grant a motion for directed verdict of acquittal only when there is no evidence whatsoever to support a guilty verdict. State v. Moore (1994), 268 Mont. 20, 64, 885 P.2d 457, 484 (citation omitted). Whether to direct a verdict of acquittal is within the trial court's discretion and we will not disturb that court's decision absent an abuse of discretion. Moore, 885 P.2d at 484.

13

Here, Campbell's confession, together with the independent evidence that the offenses were committed and that Campbell had the opportunity to commit them, provides sufficient evidence to support a guilty verdict on the charges of sexual intercourse without consent against L.D. and A.D. and sexual assault against M.M. We conclude, therefore, that the District Court did not abuse its discretion in denying Campbell's motion for a directed verdict of acquittal.

4. Was Campbell denied effective assistance of counsel?

Campbell argues that he did not receive the effective assistance of trial counsel guaranteed by the Sixth Amendment to the United States Constitution. A defendant seeking to reverse a judgment on the basis of ineffective assistance of counsel bears a heavy burden. State v. Baker (1995), 272 Mont. 273, 282, 901 P.2d 54, 59, cert. denied, 116 S.Ct. 940 (1996).

We apply the two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, in evaluating a claim of ineffective assistance of counsel. Baker, 901 P.2d at 59. The first Strickland prong requires a defendant to establish that counsel's performance was deficient pursuant to the "reasonably effective assistance" test; if counsel acted within the range of competence demanded of attorneys in criminal cases, counsel's performance was not deficient. Baker 901 P.2d at 59. Moreover, judicial scrutiny of counsel's actions must be highly deferential and counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. Kills

14

on Top v. State (1995), 273 Mont. 32, 49, 901 P.2d 1368, 1379 (citing Strickland, 466 U.S. at 688-89).

The second Strickland prong requires a defendant to establish that the deficient performance prejudiced him and deprived him of a fair trial. Baker, 901 P.2d at 59. Prejudice is evaluated by whether a reasonable probability exists that, but for the deficient performance, the outcome of the trial would have been different. Baker, 901 P.2d at 59. A defendant must establish both deficient performance and prejudice to prevail on a claim of ineffective assistance of counsel, and this Court will not second-guess trial tactics and strategy. Baker, 901 P.2d at 59.

Campbell contends that trial counsel's performance was deficient in failing to conduct an independent investigation regarding the offenses; in failing to obtain a psychological evaluation to establish that Campbell was unfit to stand trial; and in failing to object to having Marla North, who had evaluated the victims of the offenses, conduct his presentence sexual offender evaluation. He asserts that these deficiencies in counsel's performance prejudiced him and deprived him of a fair trial. We address Campbell's contentions in turn.

a. Independent Investigation

We observe that nothing of record before us relates to whether counsel independently investigated the offenses with which Campbell was charged and, if so, the extent of any such investigation. "[A]llegations of ineffective assistance of counsel which are based on facts which cannot be documented from the record in the

15

underlying case must be raised by petition for post-conviction relief." State v. Bromgard (1995), 273 Mont. 20, 23, 901 P.2d 611, 613 (citing State v. Courchene (1992), 256 Mont. 381, 847 P.2d 271). Thus, Campbell's claim that his counsel did not conduct an independent investigation cannot be raised on direct appeal and is not properly before us.

b. Psychological Evaluation

Campbell's argument regarding his counsel's failure to obtain a psychological evaluation appears to be a composite of two different contentions, neither of which is clearly developed or supported by authority. He argues first that counsel failed to assert his lack of mental capacity to formulate the requisite "knowingly or purposely" mental state element of the offenses.

The record is clear that neither lack of mental capacity nor mental disease or defect was asserted in response, or as a defense, to the crimes with which Campbell was charged. The record is equally clear, however, that counsel made an affirmative decision not to argue that Campbell did not have the requisite mental state or mental capacity to commit the offenses; indeed, counsel told the jury that Campbell's low I.Q. did not mean that he was not capable of committing the crimes charged. Counsel's strategy in this case is reflected in his additional statement to the jury that the testimony would show that Campbell's low I.Q. made him "susceptible to influence by Officer Sanders to present a false statement." In other words, faced with the admission of Campbell's confession, counsel sought to persuade the jury that the confession was false

16

and resulted from Campbell's inability to withstand Officer Sanders' influence.

As discussed above, we do not second-guess counsel's trial tactics and strategy. See Baker, 901 P.2d at 59. We conclude, therefore, that Campbell has not established that counsel's performance was deficient in this regard.

Campbell also argues that his counsel's failure to obtain a psychological evaluation to determine his competence and fitness to stand trial constituted deficient performance. The record reflects that Campbell's counsel moved for an examination of Campbell's mental condition pursuant to § 46-14-202, MCA, and requested that Yellowstone Psychological Services be appointed to perform the examination by virtue of its expertise regarding alleged sex offenders. By Minute Entry, the District Court ordered both a § 46-14-202, MCA, examination and a sex offender evaluation. The court's subsequent written order varied somewhat from the Minute Entry order. In its written order, the court appointed Yellowstone Psychological Services to perform the sex offender evaluation at the expense of Campbell's family, as agreed, and observed that "[s]hould it be deemed necessary that further evaluation regarding the defendant's competency is required, such shall be ordered."

At the end of the later hearing on Campbell's motion to suppress, the court inquired about whether the evaluation was to be conducted. Counsel responded that Campbell's mother, who had retained--and was paying--him, could not afford the evaluation. Counsel also stated his uncertainty regarding whether he could

17

establish that Campbell was indigent so as to have the **evaluation** performed without charge to Campbell under § 46-14-202(4), MCA. The record is silent regarding the psychological evaluation thereafter.

As set forth above, a strong presumption exists that counsel's conduct falls within a wide range of reasonable professional assistance and the burden is on the defendant to show that counsel's performance was deficient. See Kills on Top, 901 P.2d at 1379; Baker, 901 P.2d at 59. While it is arguable that counsel should have moved for a determination of Campbell's indigency in order to obtain a psychological evaluation at state or county expense, it also is possible that counsel merely decided that such an evaluation was not likely to be helpful to Campbell. Such a decision, if made or considered, may have been buttressed by the District Court's determinations in denying Campbell's motion to suppress that, notwithstanding his low I.Q., Campbell made the confession voluntarily and did not have difficulty in testifying on that motion.

We need not speculate, however, on whether counsel's failure to obtain a psychological evaluation of Campbell was a strategic or tactical decision rather than an act outside the wide range of reasonable professional assistance. Assuming arguendo that this failure constituted deficient performance, Campbell still must establish that the deficiency prejudiced him and deprived him of a fair trial. See Baker, 901 P.2d at 59. In other words, does a reasonable probability exist that, had the psychological evaluation

18

been obtained, the outcome of Campbell's trial would have been different? See Baker, 901 P.2d at 59.

In this regard, Campbell points only to the following testimony by his mother at the suppression hearing:

Q: In terms of raising your son, wasn't it true that he had a certain diagnosis placed on him about this time of schizophrenia?

A: Yes.

Q: Do you recall that?

A: I can't even remember the word. It's so vague.

This testimony is sketchy at best; it provides neither a clear time frame for the question nor a clear answer that a diagnosis of schizophrenia actually was made. Furthermore, Campbell cites to no authority under which any and all diagnoses of schizophrenia result in a lack of mental capacity or a mental disease or defect as those terms are used in the law.

In addition, we observe that Campbell's counsel made a motion on Campbell's behalf regarding diminished capacity at the sentencing hearing. Marla North, who had performed Campbell's presentence sex offender evaluation, filed a report and testified. Apparently based on counsel's motion and Ms. North's evidence, the District Court determined, for sentencing purposes, that Campbell's mental capacity was significantly impaired at the time he committed the offenses; it did so in the context of deciding not to apply the mandatory minimum sentence ordinarily required upon conviction for the offense of sexual intercourse without consent against a victim "less than 16 years old [when] the offender is 3 or more years

19

older than the victim ." See § 45-5-503(3)(a), MCA. Pursuant to § 46-18-222(2), MCA, mandatory minimum sentences do not apply if

> the defendant's mental capacity, at the time of the commission of the offense for which the defendant is to be sentenced, was significantly impaired, although not so impaired as to constitute a defense to the prosecution.

Nothing in this additional evidence of record regarding Campbell's mental capacity supports his conclusory allegation that the absence of a psychological evaluation prejudiced him and prevented him from having a fair trial. See Baker, 901 P.2d at 59. Nor does anything of record establish a reasonable probability that a psychological evaluation would have produced a different result in this case. See Baker, 901 P.2d at 59. Therefore, we conclude that Campbell has not established prejudice with regard to his counsel's failure to obtain a psychological evaluation.

c. Presentence Sex Offender Evaluation

Campbell's final allegation of ineffective assistance of counsel relates to counsel's failure to object to Ms. North, who had evaluated the victims of the offenses and testified for the State at trial, performing the presentence sex offender evaluation. As a general rule, defense counsel's use of objections lies within his or her discretion; in the context of an ineffective assistance claim, a "failure to object must, in addition to being error, also prejudice the defendant." State v. Hurlbert (1988), 232 Mont. 115, 120, 756 P.2d 1110, 1113 (citations omitted).

The record reflects that the District Court ordered Campbell's counsel to make the arrangements for the presentence sex offender

20

evaluation and that counsel chose to have Ms. North perform the evaluation.    We need not speculate regarding whether counsel's affirmative choice could have constituted deficient performance under the first Strickland prong, because it is clear that Campbell has not established the prejudice prong of the Strickland test.

Campbell alleges that "it seems reasonable to assume that [Ms. North's] objectivity in conducting the evaluation of the defendant might well have been compromised." At best, this allegation--which is premised on both an assumption and a "might have"--can be characterized as conclusory, and conclusory allegations are insufficient to meet a defendant's burden in establishing ineffective assistance of counsel. See Hurlbert, 756 P.2d at 1113. Moreover, as discussed above, the District Court apparently relied on Ms. North's confidential report and testimony at the sentencing hearing in excepting Campbell from the mandatory minimum sentences which ordinarily would have attached upon his conviction of sexual intercourse without consent against L.D. and A.D.    Thus, we conclude that Campbell has not established that having Ms. North perform the presentence sex offender evaluation prejudiced him.

In summary, we decline to address Campbell's claim of ineffective assistance based on his counsel's failure to independently investigate the offenses with which he was charged. With regard to Campbell's ineffective assistance allegations relating to mental state and mental capacity, and counsel's failure to object to Ms. North performing the presentence sex offender evaluation, we conclude that Campbell has not met his burden under

21

the _Strickland_ test. As to these latter claims, therefore, we hold that Campbell was not denied effective assistance of counsel.

> 5. Did the District Court err regarding either its order for a psychological examination or a determination that Campbell was indigent?

Campbell advances several abbreviated, and largely unsupported, arguments asserting error by the District Court, rather than by counsel, relating to the ordered psychological examination and his alleged indigency. We address each in turn.

We observe, first, that the issue statement under which the arguments referenced immediately above are set forth states that the trial court erred in failing to order psychological evaluations prior to trial. This "issue statement" is not developed and, in any event, mischaracterizes the record. As discussed above in issue 4b, the District Court did, by Minute Entry, order both a § 46-14-202, MCA, examination and a sex offender evaluation; its subsequent written order was specifically for the sex offender evaluation, but indicated that a § 46-14-202, MCA, examination would be ordered if required. Moreover, Campbell concedes that the court ordered the requested evaluation.

Next, Campbell argues that, in light of the District Court's order for an evaluation of his mental competency, the court erred in failing to ensure that its order was carried out. He relies on §§ 46-14-202(1) and (4), MCA, and State v. Bartlett (1995), 271 Mont. 429, 898 P.2d 98.

Section 46-14-202(1), MCA, provides that, if a defendant or defense counsel files a written motion requesting an examination or

22

if the issue of a defendant's fitness to proceed is raised by the court, the prosecution or defense counsel, the district court "shall appoint" a qualified professional to examine and report on the defendant's mental condition. The language of the statute is mandatory on its face and we have so held. See Bartlett, 898 P.2d at 100. We reversed the trial court's denial of a § 46-14-202, MCA, motion for examination in Bartlett, observing that the statute, which originally had vested a measure of discretion in the trial court regarding the grant or denial of such a motion, is now compulsory. Bartlett, 898 P.2d at 100.

In the present case, Campbell's counsel filed a written motion for an examination pursuant to § 46-14-202, MCA, and the District Court granted the motion, as required by the statute and Bartlett. In arguing that the court erred "in failing to follow up on its own order," Campbell seeks to place an affirmative duty on the trial court to "enforce" the order granting defense counsel's motion. Nothing in § 46-14-202(1), MCA, or Bartlett imposes such an obligation.

Campbell argues separately that the District Court was required, sua soonte, to determine that Campbell was indigent for purposes of obtaining the examination without cost to Campbell or his family. He relies on the portion of § 46-14-202(4), MCA, which provides that

> [i]f the defendant is indigent . . . , the cost of the examination must be paid by the county or the state, or both, according to procedures established under 3-5-902(1).

23

Nothing in § 46-14-202(4), MCA, requires, or even suggests, that a district court must <u>sua soonte</u> raise and determine the question of a defendant's indigency upon a motion for examination thereunder. Nor does Campbell cite to **any** authority imposing such a requirement.

Moreover, in the present case, no showing was made that Campbell was indigent for purposes of obtaining the examination at county or state expense under § 46-14-202(4), MCA. No determination of indigency had been requested or made for purposes of court-appointed counsel under § 46-8-111, MCA, and, indeed, the motion for examination pursuant to § 46-14-202(1), MCA, specifically was premised on payment by Campbell or his mother. We cannot ascribe error to a district court for failing to take an action neither requested by the party nor required by the law.

We conclude that the District Court did not err in failing to enforce its order for a psychological examination. We further conclude that the court did not err in failing to determine, <u>sua sponte</u>, that Campbell was indigent for purposes of that examination.

Affirmed.

_____
Justice

24

We concur:

_____
Chief Justice

_____

_____
Justices